## ADARAND CONSTRUCTORS, INC. *v.* MINETA, SECRETARY OF TRANSPORTATION, ET AL.

No. 00–730.  Argued October 31, 2001—Decided November 27, 2001

*William Perry Pendley* argued the cause and filed briefs for petitioner.

*Solicitor General Olson* argued the cause for respondents. With him on the brief were *Assistant Attorney General Boyd, Deputy Solicitor General Clement, Jeffrey A. Lamken, Mark L. Gross, Teresa Kwong, Paul M. Geier, Peter J. Plocki, Peter S. Smith,* and *Edward V. A. Kussy.**

---

*Briefs of *amici curiae* urging reversal were filed for the Associated General Contractors of America, Inc., by *John G. Roberts, Jr.,* and *Michael E. Kennedy;* for the Center for Individual Rights by *Michael E. Rosman;* for the Claremont Institute Center for Constitutional Jurisprudence by *Edwin Meese III;* for GEOD Corp. et al. by *Martin S. Kaufman* and *Briscoe R. Smith;* and for the Pacific Legal Foundation et al. by *John H. Findley* and *Sharon L. Browne.*

Briefs of *amici curiae* urging affirmance were filed for the City and County of Denver by *Eileen Penner* and *J. Wallace Wortham, Jr.;* for the Lawyers' Committee for Civil Rights Under Law et al. by *John A. Payton, Charles T. Lester, Jr., Norman Redlich, Barbara R. Arnwine, Thomas J. Henderson, Steven R. Shapiro, Christopher A. Hansen, Antonia Hernandez, Dennis C. Hayes,* and *Elliot M. Mincberg;* for the NOW Legal Defense and Education Fund et al. by *Martha F. Davis* and *Mitchell A. Lowenthal;* for the Minority Business Enterprise Legal Defense and Education Fund, Inc., et al. by *Bradley S. Phillips, Paul J. Watford,* and *Fred A. Rowley, Jr.;* for the NAACP Legal Defense and Educational Fund, Inc., by *Elaine R. Jones, Theodore M. Shaw, Norman J. Chachkin, James L. Cott,* and *Robert H. Stroup;* for the National League of Cities et al. by *Richard Ruda, James I. Crowley,* and *Robert Brauneis;* for the Office of Communication of the United Church of Christ et al. by *David Honig* and *Shelby D. Green;* for the Women First National Legislative Committee et al. by *Edward W. Correia;* and for Senator Max Baucus et al. by *Mr. Correia.*

Briefs of *amici curiae* were filed for the National Asian Pacific American Legal Consortium et al. by *Mark A. Packman, Jonathan M. Cohen,*

PER CURIAM.

We granted certiorari to review for a second time whether the Court of Appeals was correct when it concluded that the Department of Transportation's (DOT's) Disadvantaged Business Enterprise (DBE) program is consistent with the constitutional guaranty of equal protection. But upon full briefing and oral argument we find that the current posture of this case prevents review of that important question. To address it would require a threshold inquiry into issues decided by the Court of Appeals but not presented in the petition for certiorari. We therefore dismiss the writ of certiorari as improvidently granted.

Six years ago in *Adarand Constructors, Inc.* v. *Peña,* 515 U. S. 200 (1995) *(Adarand I),* we held that strict scrutiny governs whether race-based classifications violate the equal protection component of the Fifth Amendment's Due Process Clause. See *id.,* at 235 ("Federal racial classifications, like those of a State, must serve a compelling governmental interest, and must be narrowly tailored to further that interest"). We remanded for a determination whether the race-based components of the DOT's DBE program could survive this standard of review.

On remand, the District Court for the District of Colorado found that no such race-based component then in operation could so survive. *Adarand Constructors, Inc.* v. *Peña,* 965 F. Supp. 1556 (1997). The Court of Appeals vacated the District Court's judgment, reasoning that petitioner's cause of action had been mooted because the Colorado Department of Transportation had recently certified petitioner as a DBE. *Adarand Constructors, Inc.* v. *Slater,* 169 F. 3d 1292, 1296–1297 (CA10 1999). Finding it not at all clear that petitioner's certification was valid under DOT regulations, we again

and *Vincent A. Eng;* for Social Science and Comparative Law Scholars by *Clark D. Cunningham;* for the Southeastern Legal Foundation, Inc., by *Walter H. Ryland* and *Valle Simms Dutcher;* and for L. S. Lee, Inc., by *Mr. Ryland.*

granted certiorari, reversed the Court of Appeals, and remanded for a determination on the merits consistent with *Adarand I. Adarand Constructors, Inc.* v. *Slater,* 528 U. S. 216 (2000) *(per curiam).*

Following the submission of supplemental briefs addressing statutory and regulatory changes that had occurred since the District Court's 1997 judgment favorable to petitioner, the Court of Appeals affirmed in part and reversed in part. 228 F. 3d 1147 (CA10 2000). The Court of Appeals agreed with the District Court that the DOT's DBE program was unconstitutional as it was administered in 1997. It further agreed that the automatic use of financial incentives to encourage the award of subcontracts to DBEs, as originally contemplated by the DOT's Subcontractor Compensation Clause (SCC) program, was "unconstitutional under *Adarand* [*I's*] strict standard of scrutiny." *Id.,* at 1187. The Secretary of Transportation never challenged these rulings and has since discontinued any and all use of the SCC program. Brief for Respondents 2, 10, 13, 20, n. 3, 23. See also 228 F. 3d, at 1194 ("The government maintains, and Adarand does not dispute, that the SCC, which spawned this litigation in 1989, is no longer in use"); Tr. of Oral Arg. 25 ("[SCCs] ha[ve been] abandoned in all respects, [they] have not been justified, and the United States Government is not employing [them]").

The Court of Appeals next turned its attention to new regulations issued by the Secretary of Transportation under the Transportation Equity Act for the 21st Century (TEA–21), § 1101(b)(1), 112 Stat. 113. See 49 CFR pt. 26 (1999). These regulations pertain almost exclusively to use of federal funds for highway projects let by States and localities, which the Court of Appeals found to be the only "relevant" aspect of the DBE program under review. 228 F. 3d, at 1160. The Court of Appeals further noted that petitioner either lacked standing or had waived its right to challenge any other race-conscious program. *Ibid.* Finally, the

Court of Appeals held that, by virtue of the new regulatory framework under which the DOT's state and local DBE program now operates, that program passed constitutional muster under *Adarand I.* 228 F. 3d, at 1176–1187.

We again granted certiorari to decide whether the Court of Appeals misapplied the strict scrutiny standard announced in *Adarand I.* 532 U. S. 941 (2001). We anticipated that we would be able to review the same "relevant program" that was addressed by the Court of Appeals.[1] But since certiorari was granted there has been a shift in the posture of the case that precludes such review.

Both parties agree that the Court of Appeals confined its opinion to the constitutionality of the DOT's DBE program as it pertains to the use of federal funds for highway projects let by States and localities. See Brief for Petitioner 15–17; Brief for Respondents 19–23. It is clear from its opinion that the Court of Appeals considered no other programs; its strict scrutiny analysis relies almost exclusively on regulations designed to channel benefits, through States and localities, to firms owned by individuals who hold themselves out to be socially and economically disadvantaged. See 228 F. 3d, at 1176–1188. These regulations clearly permit the award of contracts based on race-conscious measures in jurisdictions where petitioner operates, and, as the Government concedes, provide petitioner with a potential basis for prospective relief, at least to the extent petitioner challenges them. Brief for Respondents 3.

It appeared at the certiorari stage that petitioner was indeed challenging these statutes and regulations. Nothing

---

[1] We granted certiorari to review the following questions:

"1. Whether the Court of Appeals misapplied the strict scrutiny standard in determining if Congress had a compelling interest to enact legislation designed to remedy the effects of racial discrimination?

"2. Whether the United States Department of Transportation's current Disadvantaged Business Enterprise program is narrowly tailored to serve a compelling governmental interest?" 532 U. S. 968 (2001).

in the petition for certiorari contested the Court of Appeals' determination that petitioner lacked standing to challenge the statutes and regulations relating to any other race-conscious program. The petition for certiorari simply noted the Court of Appeals' determination on this ground as a matter of fact, without further comment. Pet. for Cert. 4, nn. 2, 3.

Petitioner now asserts, however, that it is not challenging any part of DOT's state and local procurement program. Instead, it claims to be challenging only the statutes and regulations that pertain to DOT's direct procurement of highway construction on federal lands. Brief for Petitioner 12–17. But the statutes and regulations relating to direct procurement are quite different from the statutes and regulations reviewed by the Court of Appeals. In particular, while procurement by States and localities is governed by the regulations issued by the Secretary of Transportation under TEA–21, direct federal procurement is governed by the Small Business Act, including §§ 8(d)(4)–(6), as added by § 211 of Pub. L. 95–507, 92 Stat. 1768, and as amended, 15 U. S. C. §§ 637(d)(4)–(6) (1994 ed. and Supp. V), and the regulations promulgated thereunder, 48 CFR pt. 19 (1998).

This shift in posture requires dismissal of the writ for two reasons. *First*, the Court of Appeals has not considered whether the various race-based programs applicable to direct federal contracting could satisfy strict scrutiny. See 228 F. 3d, at 1189, n. 35 ("There is no indication from any of the parties in their briefs or elsewhere that the particular requirements of paragraphs (4)–(6) of § 8(d) are at issue in the instant lawsuit") (citing 15 U. S. C. §§ 637(d)(4)–(6) (1994 ed. and Supp. IV)); see also 228 F. 3d, at 1188–1189, n. 32 ("The parties have not addressed paragraph (4) of § 8(d) at all, and . . . we do not address it in great detail"). The Government also has not addressed such programs in its brief on the merits. Brief for Respondents 38–50. Petitioner urges us to take on this task ourselves, and apply

strict scrutiny in the first instance to a complex web of statutes and regulations without benefit of any lower court review. But in *Adarand I,* 515 U. S., at 238–239, we said that application of our strict scrutiny standard "should be addressed in the first instance by the lower courts." We ordinarily "do not decide in the first instance issues not decided below." *National Collegiate Athletic Assn.* v. *Smith,* 525 U. S. 459, 470 (1999). See also *Glover* v. *United States,* 531 U. S. 198, 205 (2001) ("In the ordinary course we do not decide questions neither raised nor resolved below"); *Youakim* v. *Miller,* 425 U. S. 231 (1976) *(per curiam)* (same).

*Second,* to reach the merits of any challenge to statutes and regulations relating to direct federal procurement would require a threshold examination of whether petitioner has standing to challenge such statutes and regulations. Petitioner has sought to show that it does have such standing, but this showing was not made (and no argument was ever advanced) until three weeks before oral argument. It was made then in a reply brief submitted with a lodging of voluminous evidence that has never been presented to any lower court. Reply Brief for Petitioner 1–9. The Government has responded with a lodging of its own, contending that no race-conscious measures are used for direct procurement in any jurisdiction in which petitioner does business.[2] Whatever the merits of these competing positions, the petition for certiorari nowhere disputed the Court of Appeals' explicit

---

[2] The Government states that a "Benchmark Study" completed by the Department of Commerce, see 64 Fed. Reg. 52806 (1999); 63 Fed. Reg. 35714 (1998), prohibits the use of race-conscious mechanisms for direct federal procurement of highway construction projects in any State other than Alabama, Mississippi, Louisiana, Arkansas, Kentucky, Tennessee, Texas, and Oklahoma, in none of which does petitioner conduct operations. Brief for Respondents 8–10, 22. At oral argument, the Government stated its view that the §§ 8(d)(4)–(6) programs in their current form would not meet the constitutional requirement of "narrow tailoring" if used in jurisdictions where the Benchmark Study has found no disparity suggesting discrimination or its continuing effects. Tr. of Oral Arg. 29–30.

holding that petitioner lacked standing to challenge the very provisions petitioner now asks us to review. 228 F. 3d, at 1160 ("Nor are we presented with any indication that Adarand has standing to challenge paragraphs (4)–(6) of 15 U. S. C. § 637(d)").

We are obliged to examine standing *sua sponte* where standing has erroneously been assumed below. See *Steel Co.* v. *Citizens for Better Environment,* 523 U. S. 83, 95 (1998) ("'[I]f the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it'") (quoting *United States* v. *Corrick,* 298 U. S. 435, 440 (1936)). But we do not examine standing *sua sponte* simply to reach an issue for which standing has been *denied* below—exactly what petitioner asks that we do here. See, *e. g., Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S. Philips Corp.,* 510 U. S. 27, 31–32 (1993) *(per curiam)* (discussing this Court's Rule 14.1(a) and the "heavy presumption" against reaching threshold questions not presented in the petition for certiorari (internal quotation marks and citations omitted)).

"Mindful that this is a court of final review and not first view," *Matsushita Elec. Industrial Co.* v. *Epstein,* 516 U. S. 367, 399 (1996) (GINSBURG, J., concurring in part and dissenting in part), we thus decline to reach the merits of petitioner's present challenge. Petitioner points out that this case presents questions of fundamental national importance calling for final resolution by this Court. But the importance of an issue should not distort the principles that control the exercise of our jurisdiction. To the contrary, "by adhering scrupulously to the customary limitations on our discretion regardless of the significance of the underlying issue, we promote respect . . . for the Court's adjudicatory process." *Adams* v. *Robertson,* 520 U. S. 83, 92, n. 6 (1997) *(per curiam)* (internal quotation marks omitted). We also "ensure that we are not tempted to engage in ill-considered

decisions of questions not presented in the petition." *Izumi Seimitsu, supra,* at 34.

For the foregoing reasons, the writ of certiorari is dismissed as improvidently granted.

*It is so ordered.*