### John CARROLL, Plaintiff,

v.

### James NAKATANI, in his capacity as Chairperson/Director of the State of Hawaii Department of Agriculture, et al., Defendants.

### Patrick Barrett, Plaintiff,

v.

### State of Hawaii, et al., Defendants.

### Nos. 00–CV–641, 00–CV–645.

United States District Court, D. Hawai'i.

Feb. 22, 2002.

See, also, 2002 WL 179494.

Paul D. Hicks, The Law Office of Richard Lee, Honolulu, HI, for John Carroll.

Girard D. Lau, Office of the Attorney General–Hawaii, Sherry P. Broder, Honolulu, HI, for defendants.

William S. Helfand, Alan N. Magenheim, Kevin D. Jewell, J. Preston Wrotenbery, Barbara E. Roberts, Magenheim Bateman & Helfand PLLC, Houston, TX, Patrick W. Hanifin, Im Hannifin Parsons, John W. Goemans, Honolulu, HI, for Patrick Barrett.

Girard D. Lau, Office of the Attorney General–Hawaii, Honolulu, for James J. Nakatani, Paul G. Lamahieu, Timothy E. Johns, Seiji Naya, Kazu Hayashida, Raymond Sato, State of Hawaii, Benjamin J. Cayetano.

Sherry P. Broder, Davies Pacific Center, Honolulu, HI, for Charles Ota, Colette Y. Machado, Nalani Olds, Nani Brandt, Clayton Hee, Gladys Brandt, Dante Carpenter, Beniamina Ilei, Hannah Springer, Office of Hawaiian Affairs.

Arnold L. Lum, Native Hawaiian Legal, Honolulu, HI, for Ilio'ulaokalani Coalition, Inc., Victoria Hlot–Takamine, Pilani Smith, Wayne Kaho'onei Panoke, Momi Kamahele.

Philip W. Miyoshi, McCorriston Miller Mukai MacKinnon, LLP, Honolulu, HI, Bert T. Kobatashi, Jr., Konayashi Sugita & Goda, Honolulu, HI, for State Council of Hawaiian Homestead Association, Anthony Sang, Jr.

## *ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF CARROLL AND DENYING PLAINTIFF CARROLL'S MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The court heard the parties' Motions on February 19, 2002. Sherry Broder, Esq., appeared on behalf of Defendant OHA; Paul Hicks, Esq., appeared on behalf of Plaintiff Carroll. After considering the Motions and the supporting and opposing memoranda, the court GRANTS Defendants' Motions for Summary Judgment and DENIES AS MOOT Plaintiff Carroll's Motion for Summary Judgment.

### *BACKGROUND*

Plaintiff John Carroll ("Plaintiff Carroll") filed suit against Defendants James Nakatani, et al. ("Defendants"), challenging the constitutionality of Article XII, Sections 5 and 6 of the State Constitution as well as Hawaii Revised Statutes, chapter 10. These laws operate to help fund the Office of Hawaiian Affairs ("OHA"), which expends money for the benefit of "Native Hawaiians" and/or "Hawaiians." Plaintiff Carroll claims that these state laws impermissibly discriminate on the basis of race in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.[1]

---

**1.** Consolidated Plaintiff Patrick Barrett filed a similar (though broader) complaint shortly after Plaintiff Carroll. On December 15, 2000, Magistrate Judge Leslie Kobayashi ordered

In his deposition taken September 10, 2001, Plaintiff Carroll acknowledged that he has never identified any particular OHA program that he would like to participate in, and that he has never applied for any OHA program.

On September 19, 2001, Defendant OHA moved for summary judgment on the grounds that there is no genuine issue as to any material fact that Plaintiff Carroll has not been injured and therefore, does not have standing to assert and/or maintain his claims against OHA. Defendant State of Hawaii joined this motion on September 19, 2001.

On September 20, 2001, Plaintiff Carroll filed his own motion for summary judgment seeking a declaration that §§ 5 and 6 of Article XII of the Constitution of the State of Hawaii and Chapter 10 of the Hawaii Revised Statutes are unconstitutional as they operate to deprive him of his civil rights in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

On January 31, 2002, Plaintiff Carroll filed his opposition to Defendants' Motion. Defendants filed a reply on February 8, 2002.

### STANDARD OF REVIEW

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91

L.Ed.2d 265 (1986). Courts must view the evidence and make any inferences in the light most favorable to the party opposing summary judgment. *See Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1362 (9th Cir.1985). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. *See* Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *See Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: the evidence either presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *See id.* (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

consolidation of the two cases. The instant motions relate only to Plaintiff Carroll's Complaint. For additional background information, *see* "Order Directing Consolidation of Cases" (filed Dec. 15, 2000).

Where the summary judgment motion is based on standing, however, the plaintiff must make "a factual showing of perceptible harm." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 566, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Deck v. American Hawaii Cruises, Inc.,* 121 F.Supp.2d 1292, 1299 (D.Haw.2000) ("stating that even on summary judgment motion plaintiff bears burden of demonstrating standing 'by specific evidentiary facts and not by mere allegations.' "). In a challenge to standing, the party seeking to invoke federal jurisdiction bears the burden of showing that jurisdiction is proper, even if it is the non-moving party. *See Unigard Ins. Co. v. Dept. of Treasury,* 997 F.Supp. 1339, 1341 (S.D.Cal.1997) (citing *Thornhill Publishing Co. v. Gen. Tel. & Electronics Corp.,* 594 F.2d 730 (9th Cir. 1979)).

## *DISCUSSION*

Before proceeding on the merits of any case, plaintiffs must establish that they have "standing" to sue, that is, they must show that they present a "case or controversy." U.S. Const. Art. III, § 2. The Supreme Court has articulated three basic standing requirements: (1) the plaintiff must have suffered an "injury-in-fact," which is actual, concrete, and particularized, not conjectural or hypothetical; (2) the injury must have been caused by the defendant; and (3) the injury must be one that is redressable by the court. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Valley Forge Christian College v. Americans for Separation of Church and State,* 454 U.S. 464, 474–475, 102 S.Ct. 752, 70 L.Ed.2d 700(1982) (finding that courts should refrain from deciding " 'abstract questions of wide public significance' which amount to 'generalized grievances.' "). The court, therefore, now discusses each of these elements.

### 1. Injury in Fact

In his deposition, Plaintiff Carroll acknowledged that he has never identified any particular OHA program that he would like to participate in, and that he has never applied for any OHA program. Defendants therefore argue that Plaintiff has not articulated any injury in fact, rather he has stated a generalized grievance, which is not sufficient to maintain his standing to bring suit in this case.

The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351, (1992); *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* (1982). In *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) the Supreme Court stated that "the rule against standing for those parties with only generalized grievances applies with as much force in equal protection context as in any other; therefore, even if governmental action is discriminating on the basis of race, the resulting injury affords a basis for standing only to those persons who were personally denied equal treatment by the challenged discriminatory conduct. U.S.C.A. Const. Art. 3, § 1 et seq.; Amend. 14." *Id.* at 742, 115 S.Ct. 2431. Defendants maintain that Plaintiff Carroll has not made any showing that he was personally impacted by OHA's practices as is required to maintain this action.

The court agrees with Plaintiff's interpretation of cases such as *Northeastern Florida Chapter of the Associated General*

*Contractors of America v. City of Jacksonville, Florida,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) and *Valley Forge Christian College.* Plaintiff maintains that these cases stand for the simple and fundamental proposition which, in this context, is that one must be *personally* subjected to a racial classification in order to have standing to challenge that racial classification in federal court.

Plaintiff maintains that §§ 5 and 6 of Article XII of the Constitution of the State of Hawaii and HRS Chapter 10 subject each and every resident of the State of Hawaii *personally* to a racial classification. These provisions empower the state to develop a "comprehensive master plan for native Hawaiians and Hawaiians" and to consider the "physical, sociological, psychological, and economic needs" of these groups. The Supreme Court has held that the terms "native Hawaiians" and "Hawaiians" are racial. *Rice v. Cayetano,* 528 U.S. 495, 514–516, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000). According to Plaintiff Carroll, consideration of racial background in the operation and management of OHA personally subjects every resident of the State of Hawaii to racial classification. Therefore, every resident would have standing to challenge these provisions.

However, Plaintiff fails to provide any evidence of personal impact of a racial classification. *Allen v. Wright* made clear that even if a governmental actor is discriminating on the basis of race, the resulting injury "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." 468 U.S., at 755, 104 S.Ct. 3315, (quoting *Heckler v. Mathews,* 465 U.S. 728, 740, 104 S.Ct. 1387, 79 L.Ed.2d 646, (1984)). Plaintiff Carroll has not been personally denied equal treatment. The basis upon which he maintains his standing to bring this action would allow any individual to have standing to challenge any existing affirmative action program. The courts have clearly rejected this broad notion of standing in the affirmative action context. The cases cited by Plaintiff Carroll himself do not support his proposition.

In *Wooden v. Board of Regents of the University of Georgia,* 247 F.3d 1262 (11th Cir.2001), three Caucasian applicants were denied admission to the University of Georgia, and thereafter brought suit against officials of the University of Georgia. Plaintiffs claimed that the university's freshman admissions policies impermissibly favored non-whites over whites in violation of the Equal Protection Clause and various federal civil rights statutes. The Eleventh Circuit found that only one applicant had standing to challenge the admissions process. Only the applicant whose application had made it to the second stage of the process where non-white applicants were awarded 0.5 for being non-white, was found to have standing as he was personally subject to the racial classification. The other applicants, despite the fact that racial classification was clearly a step in the process, were found not to have standing because their applications had not made it to the stage where the racial classification would be applied. In those cases, there was no personal impact and no concrete injury to maintain standing. Plaintiff Carroll's position is most similar to the two applicants who were denied standing. OHA has not denied him equal protection or the opportunity to compete on equal footing because he has not been personally subjected to any racial classification at this stage. The mere existence of a racial classification system does not personally impact each and every individual who is aware of or has an interest in such classification.

Recently, the Supreme Court reiterated the principles of standing in federal court. In *Adarand Constructors, Inc. v. Mineta,* 534 U.S. 103, 122 S.Ct. 511, 151 L.Ed.2d 489 (2001), certiorari was dismissed as improvidently granted. The Tenth Circuit Court of Appeals had specifically confined its opinion to the constitutionality of the Department of Transportation's Disadvantage Business Enterprise Program as it pertained to procurement of federal funds for highway projects let by states and localities. The Tenth Circuit had ruled that Adarand had standing to challenge some certifications under the Subcontracting Compensation Clause ("SCC"). *Adarand Constructors, Inc. v. Slater,* 228 F.3d 1147, 1159 (10th Cir.2000). The Tenth Circuit discussed other programs and concluded that Adarand lacked standing to challenge any other program. After certiorari was granted, Adarand again sought to show that it did have standing to generally challenge other race-conscious programs. The government responded that no race-conscious measures were used for direct procurement in any jurisdiction in which petitioner did business and therefore did not have standing. The Supreme Court concluded that "the petition for certiorari nowhere disputed the Court of Appeals' explicit holding that petitioner lacked standing to challenge the very provisions petitioner now asks us to review." *Adarand,* 122 S.Ct. at 513.

The Tenth Circuit reasoned that "This case does not involve, nor had Adarand ever demonstrated standing to bring, a generalized challenge to the policy of maximizing contracting opportunities for small disadvantaged businesses ... or to the various goals for fostering the participation of small-owned businesses promulgated." *Id.* The Tenth Circuit limited Adarand's standing to those instances where he could show that he personally had been injured. The Supreme Court left this conclusion undisturbed. Accordingly, in the instant case, this court requires a showing of personal impact or injury to sustain Plaintiff Carroll's challenge.

Plaintiff Carroll attempts to analogize this case to the voting rights cases decided by the Ninth Circuit. He correctly states that legislation which classifies and separates voters by race has already been judged sufficient harm to confer Article III standing in the voting context. *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). However, Plaintiff Carroll fails to support his contention that this case is analogous to a voting rights or why the same standing analysis should be applied. Plaintiff Carroll cites *Hays* for the proposition that individuals residing within the "gerrymandered" district have standing to challenge legislation which creates voting districts along racial lines, and then extrapolates that the entire State of Hawaii constitutes a so-called gerrymandered district. However, there is no support for the proposition that this case can be analyzed as a voting rights case. Plaintiff Carroll contends that in this situation the injury-in-fact is the "representational" harms identified in *Hays.* However, he fails to acknowledge that such "representational harms," as termed in *Hays* and *Shaw,* are identified as "the special representational harms racial classifications can cause *in the voting context."* (Emphasis added). *Hays,* 515 U.S. at 744, 115 S.Ct. 2431. There is no support to extend this injury and the resulting standing it confers to a different context.

Defendants correctly point out that the assertion that this case is similar to a voting rights case is wholly unsubstantiated. Moreover, the United States Supreme Court considered the voting rights implications of OHA and ruled on that issue in *Rice v. Cayetano.* The question of the underlying administrative structure of

OHA was explicitly left out of the discussion and holding of that case. *Id.* This case is distinct and factually different. Plaintiff Carroll is not challenging OHA's voting practices, but rather its existence and particular goals and programs. This is not a voting rights case and the analysis of *Hays* is not applicable in this context.

Plaintiff Carroll has not shown any actual or imminent injury as result of Article XII, Sections 5 and 6 of the State Constitution or Hawaii Revised Statutes, Chapter 10. At this stage, he has merely articulated his ideological objections which constitute a generalized grievance, not a cognizable injury-in-fact.

### 2. Causation and Redressability/Ripeness

Because the court has found that Plaintiff Carroll has not suffered any injury-in-fact under the first prong of the standing analysis, it is unnecessary to address the final two prongs. Similarly, the court need not address Defendant OHA's argument that the case is not ripe for judicial review. Defendant OHA's Motion, therefore, is GRANTED. Plaintiff Carroll lacks standing to challenge Article XII, Sections 5 and 6 of the State Constitution and Hawaii Revised Statutes, Chapter 10.

As the court has found that Plaintiff Carroll lacks standing to bring this action, the court DENIES his Motion for Summary Judgment as moot.

### CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motions for Summary Judgment and DENIES Plaintiff Carroll's Motion for Summary Judgment as moot.

IT IS SO ORDERED.