# SUPREME COURT OF THE UNITED STATES

## WINSTON WEBSTER *v.* LYNN COOPER, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 08–10314.　Decided November 30, 2009

The motion of petitioner for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the Fifth Circuit for further consideration in light of *Jimenez* v. *Quarterman,* 555 U. S. ___ (2009).

JUSTICE SCALIA, dissenting.

Petitioner was convicted and sentenced in Louisiana state court. His motion for reconsideration of the sentence was denied on April 15, 2003, and he did not appeal. After initiating postconviction relief, he filed in the trial court a "motion to vacate sentence and resentence defendant" on the ground that he had not had a lawyer present at the sentencing. That motion was granted, and on June 2, 2004, petitioner was resentenced, this time with a lawyer, to the same term of incarceration.

After the conclusion of state postconviction relief, petitioner filed a petition in federal court for habeas corpus under 28 U. S. C. §2254. The District Court thought that the 1-year statute of limitations provided by §2244(d)(1)(A) started to run on May 15, 2003, 30 days after the Louisiana trial court denied petitioner's motion for reconsideration of sentence. Accordingly, it concluded that the statute had expired before petitioner filed his federal habeas petition. The Fifth Circuit denied a certificate of appealability.

Our recent decision in *Jimenez* v. *Quarterman*, 555 U. S. ___ (2009), held that the statute of limitations of §2244(d)(1)(A) does not begin to run until the expiration of

the time allowed to seek direct appeal, even if the state court allows an out-of-time appeal during state collateral review. *Id.,* at ___ – ___ (slip op., at 8). The parties do not agree, and it is not clear, whether under Louisiana law petitioner's motion to vacate would be regarded as restarting the clock for his direct appeal. If so, then the *Jimenez* error is obvious; if not, there is no error. Today, without request by (or even warning to) the parties, the Court grants certiorari, vacates the Fifth Circuit's judgment without determination of the merits, and remands for further consideration in light of *Jimenez.*

I certainly agree that we have the power to GVR "where an intervening factor has arisen that has a legal bearing upon the decision." *Lawrence* v. *Chater*, 516 U. S. 163, 191–192 (1996) (SCALIA, J., dissenting). The purpose of such an "intervening-factor" GVR is to give the court to which we remand the first opportunity to consider the factor—in this case a new decision of ours. Though we have sometimes GVR'd in light of decisions that *preceded* the decision vacated, see, *e.g., Grier* v. *United States*, 419 U. S. 989 (1974), I have acquiesced in this expansion of "intervening-factor" GVRs only when (as in *Grier*) our decision came so soon before the judgment in question "that the lower court might have been unaware of it." *Lawrence*, *supra*, at 181 (SCALIA, J., dissenting). This is not such a case: We decided *Jimenez* on January 13, 2009, more than two months before the Fifth Circuit denied the certificate. There is thus no basis for regarding that decision as an "intervening" factor—that is, one that the Court of Appeals did not have before it.

This is not, of course, the first time the Court has GVR'd on the basis of a case decided long before the Court of Appeals ruled, see, *e.g., Robinson* v. *Story*, 469 U. S. 1081 (1984) (three months), nor the first time I have protested, see *Lawrence*, *supra*, at 184 (SCALIA, J., dissenting) (more than a year). This practice has created a new mode of

disposition, a sort of ersatz summary reversal. We do not say that the judgment below was wrong, but since we suspect that it *may* be wrong and do not want to waste *our* time figuring it out, we instruct the Court of Appeals to do the job again, with a particular issue prominently in mind.

It surely suggests something is amiss that this case would be over, and petitioner would be worse off, if he had *asked* us to reverse the judgment below on the basis of *Jimenez.* Since he did not argue that ground to the Court of Appeals, and since that court did not address it, we would almost certainly deny certiorari. See *Adarand Constructors, Inc.* v. *Mineta,* 534 U. S. 103, 108–109 (2001) *(per curiam)* (dismissing a writ as improvidently granted because the question at issue was not raised or considered below). Have we established a new system in which a party's repetition before this Court of his failure below (here, the failure to invoke *Jimenez*) cures—and causes us to reward—his earlier failure? Or perhaps we are developing a new system in which *all* arguably valid points not raised and not discussed below—*whether or not* belatedly raised here—will be sent back for a redo by the Court of Appeals. And if we can apply this failure-friendly practice to a neglected precedent two months old, there is no reason in principle not to apply it to a neglected precedent two years old.

In my view we have no power to set aside the duly recorded judgments of lower courts unless we find them to be in error, or unless they are cast in doubt by a factor arising after they were rendered. The GVR for consideration of a day's old Supreme Court case is already a technical violation of sound practice and should not be extended further. Since we review judgments rather than opinions, a lower court's failure to discuss a pre-existing factor it *should* have discussed is no basis for reversal. Once we disregard the logic (and the attendant limits) of "intervening-factor" GVRs, they metastasize into today's monster.

SCALIA, J., dissenting

We should at least give it a new and honest name—not GVR, but perhaps SRMEOPR: Summary Remand for a More Extensive Opinion than Petitioner Requested. If the acronym is ugly, so is the monster.