342 F.3d 934
 John CARROLL, Plaintiff-Appellant,
v.
James NAKATANI, in his capacity as Chairperson/Director of the State of Hawaii Department of Agriculture; Paul Lamahieu, in his capacity as Chairperson/Director of the State of
Hawaii Department of Education; Timothy E. Johns, in his capacity as Chairperson/Director of the State of Hawaii Department of Land and Natural Resources; Seiji Naya, in his capacity as Chairperson/Director of the State of Hawaii Department of Business Economic Development & Tourism; Kazu Hayashida, in his capacity as Chairperson/Director of the State of Hawaii Department of Transportation; Raymond Sato, in his capacity as Chairperson/Director of the State of Hawaii Department of Accounting and General Services; State of Hawaii; Benjamin J. Cayetano, in his official capacity as the Governor of the State of Hawaii; Office of Hawaiian Affairs; Charles Ota; Collette Machado; Nalani Olds; Nani Brandt; Clayton Hee; Gladys Brandt; Dante Carpenter; Ilei Beniamina; and Hannah Springer, in their capacities as Trustees of the Board of Trustees of the Office of Hawaiian Affairs, Defendants-Appellees.
Patrick Barrett, Plaintiff-Appellant,
v.
State of Hawaii; Benjamin J. Cayetano, in his official capacity as Governor, State of Hawaii, Defendants-Appellees,
Ilio`Ulaokanani Coalition, Inc.; Victoria Holt-Takamine; Piilani Smith; Wayne Kaho`Onei Panoke; Momi Kamahele; State Council of Hawaiian Homestead Association; Anthony Sang, Sr.; Office of Hawaiian Affairs; Trustees of the Office of Hawaiian Affairs, Rowena Akana, Huanani Apoliona, Don Cataluna, Linda Dela Cruz, Clayton H.W. Hee, Colette Y. Machado, Charles Ota, Oswald K. Stender, in their official capacity as Trustees of the Office of Hawaiian Affairs, Defendants-Intervenors-Appellees.
 No. 02-15483.
 No. 02-15565.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted January 14, 2003 — San Francisco, California.
 Filed September 2, 2003.
 
 COPYRIGHT MATERIAL OMITTED William S. Helfand, Magenheim, Bateman & Helfand, P.L.L.C., Houston, Texas, for appellant Barrett.
 Paul D. Hicks, Law Offices of Richard Lee, Honolulu, Hawaii, for appellant Carroll.
 Girard D. Lau, Deputy Attorney General, Honolulu, Hawaii, for the appellees.
 Sherry P. Broder, Honolulu, Hawaii; Robert G. Klein and Philip W. Miyoshi, McCorriston, Miller, Mukai, MacKinnon, L.L.P., Honolulu, Hawaii, for the intervenors.
 Appeals from the United States District Court for the District of Hawaii; David A. Ezra, District Judge, Presiding. D.C. Nos. CV-00-00641-DAE, CV-00-00645-DAE(KSC).
 Before: PROCTER HUG, JR., ARTHUR L. ALARCÓN, and SUSAN P. GRABER, Circuit Judges.
 OPINION
 HUG, Circuit Judge.
 
 
 1
 This case stems from the Supreme Court's recent decision, Rice v. Cayetano, holding that the ancestry classification "Hawaiian," as provided in Article XII of the Hawaiian State Constitution, is race-based. 528 U.S. 495, 514-15, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000). In Rice, the Supreme Court issued a narrow ruling that limiting voter eligibility to elect the trustees to the Office of Hawaiian Affairs, a state agency, to "Hawaiians" violated the Fifteenth Amendment. Id. at 517, 120 S.Ct. 1044. The Rice Court expressly assumed, but did not decide, the validity of the underlying administrative structure and the allocation of benefits based upon Hawaiian classification. Id. at 521-22, 120 S.Ct. 1044.
 
 
 2
 Patrick Barrett ("Barrett") and John Carroll ("Carroll") now challenge this allocation of benefits. Barrett and Carroll claim Article XII of the Hawaiian Constitution, and the statutes implementing it, violate the Equal Protection clause of the Fourteenth Amendment because it restricts benefits to only those classified as "native Hawaiians"[1] or "Hawaiians."[2] Neither Barrett nor Carroll is Hawaiian or native Hawaiian. We address whether the district court properly dismissed for lack of standing Barrett and Carroll's equal protection challenges to Article XII of the Hawaiian State Constitution.
 
 I. BACKGROUND
 
 3
 On October 3, 2000, Barrett filed his original complaint in the District of Hawaii. He claims that Article XII of the Hawaiian State Constitution violates the Fourteenth Amendment because it permits the allocation of government benefits on the basis of race. He challenges the Article's creation of two state agencies and their implementation of particular benefit programs, specifically the Office of Hawaiian Affairs ("OHA") and its business loan program, and the Hawaiian Homestead Commission ("HHC") and its homestead lease program.[3] Barrett seeks a declaration that he and all races are entitled to seek the government rights and benefits created by Article XII. Barrett's case was consolidated by the district court on December 15, 2000, with companion-appellant Carroll.
 
 
 4
 On October 2, 2000, Carroll filed his original complaint in the District of Hawaii. He claims that Article XII and Hawaii Revised Statute chapter 10 violate the Fourteenth Amendment by classifying individuals and allocating government benefits on the basis of race. He challenges the Article's creation and funding of the OHA. Carroll seeks a declaration that these provisions invidiously discriminate on the basis of race, and requests the court to enjoin the state from allocating benefits through the OHA on the basis of race.
 
 
 5
 The district court granted summary judgment against Barrett on July 12, 2001. The court concluded that Barrett lacked standing to challenge the OHA's business loan program because he did not suffer an injury in fact. The court also concluded that Barrett lacked standing to challenge HHC's homestead lease program because he failed to demonstrate that a ruling in his favor would likely redress his grievance due to his decision not to include the United States as a party. The United States has reserved to itself through the Hawaiian Admission Act of 1959 the right of consent before any alteration of the system of Hawaiian homestead leases can be made. Barrett strategically avoided the inclusion of the United States as a party until after the unfavorable summary judgment order.
 
 
 6
 On July 19, 2001, Barrett filed before the district court a motion to reconsider the order granting summary judgment. Barrett raised two new issues to justify reconsideration, neither of which was previously raised or briefed before the district court. First, Barrett claimed that once the district court determined that federal law was implicated in this case, it was required to notify the United States under 28 U.S.C. § 2403 and allow it the opportunity to intervene. Second, Barrett contended that if § 2403 was not implicated, or if the United States declined its right to intervene, the court should nevertheless join the United States as a party pursuant to Federal Rule of Civil Procedure 19(a).
 
 
 7
 On September 18, 2001, the district court denied Barrett's motion for reconsideration. It held that Barrett's failure to advance these arguments at the appropriate time justified denial. It also offered alternative holdings to deny Barrett's motion. The district court concluded that notification was not necessary under 28 U.S.C. § 2403(a) because the purpose of the rule is to ensure that courts not rule on the constitutionality of an Act of Congress without first receiving input from the United States. Here, Barrett invoked § 2403(a) to remedy his own legal and strategic shortcomings of standing. Additionally, in the district court's opinion, § 2403(a) does not apply because the district court did not "directly" hold that the constitutionality of any Acts of Congress were drawn into question. Finally, the court concluded that fairness concerns required denial because throughout the litigation, Barrett maintained that he was not challenging the constitutionality of any federal law.
 
 
 8
 The district court likewise rejected Barrett's Rule 19(a) joinder argument. Barrett consistently sought to avoid inclusion of the United States in his lawsuit. It held that reasons of fairness prevented joinder at this late time to cure his standing problem. The court also noted that the purpose of Rule 19 would not be served by joinder because the rule is intended to protect the interest of absent parties, not cure defects in standing that could have otherwise been remedied much earlier.
 
 
 9
 Lastly, the court held that Barrett's injury was not redressable because there was no likelihood that a favorable ruling from the district court would enable Barrett to compete on an equal footing. The only reason for the homestead lease program is to benefit native Hawaiians. If declared unconstitutional, nothing guarantees the State would continue to operate the program.
 
 
 10
 The district court granted summary judgment against Carroll on February 22, 2002. The court concluded that Carroll lacked standing to challenge the constitutionality of Article XII and chapter 10 because he did not demonstrate any injury from the denial of equal treatment. The district court concluded that Carroll presented only a generalized grievance against the OHA's allocation of benefits to Hawaiians and native Hawaiians. The court rejected Carroll's contention that his standing claim of "representational harm" was analogous to standing in voting rights cases.
 
 
 11
 Jurisdiction before this court is proper under 28 U.S.C. § 1291.
 
 II. STANDARD OF REVIEW
 
 12
 Standing is a question of law reviewed de novo. Bernhardt v. County of Los Angeles, 279 F.3d 862, 867 (9th Cir.2002).
 
 
 13
 A grant of summary judgment is reviewed de novo. Oliver v. Keller, 289 F.3d 623, 626 (9th Cir.2002). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court properly applied the relevant substantive law. Id.
 
 
 14
 The district court's denial of a motion for reconsideration is reviewed for an abuse of discretion. Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir.2000).
 
 III. STANDING
 
 15
 Standing is an essential component of the case or controversy requirement of Article III, section 2 of the United States Constitution. The Supreme Court has articulated three irreducible standing requirements: (1) the plaintiff must have suffered an "injury in fact," which is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) the injury must be caused by the defendant; and (3) it must be likely, rather than speculative, that the injury will be redressable by the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Arakaki v. Hawaii, 314 F.3d 1091, 1097 (9th Cir.2002). The party invoking federal jurisdiction bears the burden of establishing these elements. Lujan, 504 U.S. at 561, 112 S.Ct. 2130.
 
 
 16
 The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient to confer standing. United States v. Hays, 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). The Court requires that even if a government actor discriminates on the basis of race, the resulting injury "accords a basis for standing only to those persons who are personally denied equal treatment." Allen v. Wright, 468 U.S. 737, 755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (internal quotation marks omitted). Additionally, the Supreme Court recommends that even when a plaintiff has alleged redressable injury sufficient to satisfy the standing requirements of Article III, courts should refrain from "adjudicating abstract questions of wide public significance which amount to generalized grievances." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (internal quotation marks omitted). Finally, the rule against generalized grievances applies in equal protection challenges. Hays, 515 U.S. at 743-44, 115 S.Ct. 2431.
 
 
 17
 In Barrett's challenges to the district court's grant of summary judgment, he presents two issues for appeal. First, he contends that the district court erred in finding that he lacked standing to challenge OHA's business loan program. Second, he claims the district court erred in finding that he lacked standing to challenge the HHC's homestead lease program because his claim, as presented, was not redressable. He does not appeal the adverse summary judgment ruling against his challenge to Article XII's native Hawaiian gathering rights.
 
 
 18
 Carroll claims the district court erred in finding he failed to demonstrate an injury in fact. Carroll offers three alleged injuries in fact. First, Carroll contends he suffered injury by the Article XII and chapter 10 provisions personally subjecting him to racial classification. Second, he argues he suffered injury from the OHA allocation of grants and benefits, which in his words, provides "greater sovereignty within the State of Hawaii's system of government" to native Hawaiians and Hawaiians than to State residents of other races. Carroll objects to the OHA's stated mission of providing for the "physical, sociological, psychological, and economic needs" of Hawaiians and native Hawaiians. Hawaii Rev. Stat. § 10-6(a)(1)(B). He cites the absence of any state agency charged with improving the condition of Caucasian people. Third, Carroll argues that his injury is analogous to "representational harm" discussed in the context of racially gerrymandered voting districts.
 
 
 19
 We address each appellant's arguments in turn.
 
 IV. BARRETT'S CLAIMS
 A. The OHA Business Loan Program
 
 20
 Barrett sought to obtain a loan to start a copy shop. Barrett filed an incomplete loan application before OHA, stating only his name, address, the requested loan amount ($10,000), and the fact that he is 0% Hawaiian. He left blank the portions of the application requesting his social security number, his phone number, and information regarding the proposed business. OHA returned the application to Barrett with a note requesting he complete the omitted information and return it to OHA.
 
 
 21
 Barrett never responded to OHA's request for additional information. He admitted in his deposition, taken three months after the return of the application, that he had yet to prepare a business plan, and had not determined the cost of rent, equipment, leasing, or any other supplies, and that the only step taken in furtherance of his business was to speak with a sales clerk at Office Depot. He also testified that he has no work history since 1975, he is disabled and his sole source of income is Social Security disability payments. Finally, as noted by the district court, Barrett's complaint was filed October 3, 2000, and his loan application is dated October 19, 2000.
 
 
 22
 When a plaintiff brings an equal protection challenge to a race-conscious program and seeks forward-looking relief, the injury is not the inability to obtain the benefit, but the inability to compete on an equal footing. Northeastern Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); accord Texas v. Lesage, 528 U.S. 18, 21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999). In Northeastern Florida, an association of contractors challenged the city's program setting aside 10% of all government contracts for businesses that were at least 51% women — or minority-owned. 508 U.S. at 658, 113 S.Ct. 2297. The Court held that to establish standing, a plaintiff need only demonstrate that it is "able and ready" to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis. Id. at 666, 113 S.Ct. 2297. The Court found as sufficient for standing the plaintiff's claim that its members "regularly bid on contracts in Jacksonville and would bid on those that the city's ordinance makes unavailable to them." Id. at 668, 113 S.Ct. 2297.
 
 
 23
 This Circuit applied Northeastern Florida's "able and ready" standard in Bras v. California Pub. Util. Comm'n, 59 F.3d 869, 873 (9th Cir.1995). In Bras, the plaintiff challenged a pre-qualification preference for women — and minority-owned businesses. Id. at 871. The plaintiff had provided architectural services for more than 20 years to Pacific Bell and alleged that he had lost out on the ability to continue providing services due to the discriminatory preference. Id. Utilizing the "able and ready" standard from Northeastern Florida, this court held that the plaintiff had standing to challenge the pre-qualification preference. Id. at 873. We cited as evidence of his readiness the plaintiff's declaration that he desired to reinstate his long-term relationship with Pacific Bell, and a declaration from Pacific Bell that it was pleased with his past work and would consider him for future work. Id. at 874.
 
 
 24
 Viewing the evidence in the light most favorable to Barrett, he cannot demonstrate he has been denied equal treatment. Barrett fails to demonstrate he is "able and ready" to compete on an equal basis for an OHA loan, or benefit from the OHA's assistance in applying for one. Submission of a symbolic, incomplete application demonstrates neither readiness nor ability to compete for an OHA small business loan. Additionally, he did not seek alternative sources of financing (as required by OHA for Hawaiians), he failed to formulate even a basic business plan, has no work history for the past 25 years, has not researched necessary business expenses such as rent or equipment, and has only a vague sense about the cost of paper.
 
 
 25
 In certain circumstances, the intent of the applicant may be relevant to standing in an equal protection challenge. Gratz v. Bollinger, ___ U.S. ___, ___-___, 123 S.Ct. 2411, 2422-23, 156 L.Ed.2d 257 (June 23, 2003). In Gratz, there was an issue of whether plaintiff Patrick Hamacher lacked standing to challenge the University of Michigan's transfer student admissions policies because he failed to actually apply for transfer admission. Id. at 2422. The Supreme Court held that Hamacher had standing to seek injunctive relief with respect to the university's use of race in undergraduate admissions despite not actually applying for transfer admission. Id. at 2423. The district court made the factual finding that Hamacher "intends to transfer." Id. Hamacher also demonstrated that he was "able and ready" to apply as a transfer student, pursuant to Northeastern Florida, because he applied as a freshman applicant and was denied admission even though an underrepresented minority applicant with his qualifications would have been admitted. Id.
 
 
 26
 Even assuming Barrett had a legitimate intention to apply for a loan, he has done essentially nothing to demonstrate that he is in a position to compete equally with other OHA loan applicants. His application is materially deficient. Unlike the contractor cases cited above, he has no work history with small business copy shops or any other entrepreneurial endeavors that might bolster his bona fides.[4] Barrett did not respond to OHA's request for additional information to complete the application. His failure to respond to the OHA's request for additional information further illustrates that he is not prepared to compete for the loan.
 
 
 27
 Instead, Barrett presents a generalized grievance. The rule against generalized grievances applies in equal protection challenges. Hays, 515 U.S. at 743-44, 115 S.Ct. 2431. Barrett's declaration of "interest" in starting a copy shop, and submission of a meritless application falls short of being "able and ready" to compete.
 
 
 28
 Because Barrett fails to demonstrate an injury in fact, we need not address the second and third standing requirements, causation and redressability. Lujan, 504 U.S. at 561, 112 S.Ct. 2130.
 
 B. The Homestead Lease Program
 
 29
 Barrett contends that he is unable to compete on an equal footing with native Hawaiians for a Hawaiian homestead lease. He claims Article XII's implementation of the Hawaiian Homes Commission Act ("HHCA") violates the Fourteenth Amendment because government benefits, leases to public lands, are available only to native Hawaiians.
 
 1. Injury in Fact
 
 30
 The district court concluded that, unlike the business loan application, Barrett had suffered an injury in fact from the denial of his homestead lease application. The record before the court indicated that to obtain a homestead lease, a person need only state a desire to obtain a lease and provide certain personal information. All parties agree with the district court's conclusion that Barrett adequately demonstrated an injury in fact.
 
 2. Redressability
 
 31
 Barrett challenges Hawaii's Article XII insofar as it creates the Hawaiian Homes Commission. In his complaint, he broadly challenges the HHC and all the state laws, regulations and governmental rules that authorize the HHC to provide government benefits on the basis of race. One of the laws he singles out is the Hawaiian Homes Commission Act.
 
 
 32
 The HHCA was originally passed by the Unites States Congress on July 9, 1921. 67 Pub.L. No. 34, ch. 42, 42 Stat. 108. It set aside, in trust, approximately 200,000 acres of land for homesteading by native Hawaiians. Id.; see also Rice, 528 U.S. at 507, 120 S.Ct. 1044. When Hawaii was admitted as the 50th state of the Union in 1959, it agreed to adopt the HHCA as part of its own Constitution. Pub.L. No. 86-3, §§ 4, 7, 73 Stat. 4 ("Admissions Act"); see also Haw. Const. art. XII, §§ 1-3. The United States granted Hawaii title to all public lands and public property within the boundaries of the State, including the 200,000 acres set aside under the HHCA, with the exception of certain lands the federal government reserved for its own use. Admissions Act § 5(a)-(d), 73 Stat. 4. Section 208 of the HHCA, as provided in the Hawaii Constitution, imposes the condition that recipients of Hawaiian homestead leases be "native Hawaiian." Haw. Const. art. XII, § 1 (2003).
 
 
 33
 Even though the United States granted Hawaii title to the HHCA lands, it reserved to itself a right of consent to any changes in the homestead lease qualifications. Section 4 of the Admissions Act states:
 
 
 34
 As a compact with the United States relating to the management and disposition of the Hawaiian home lands, the Hawaiian Homes Commission Act, 1920, as amended, shall be adopted as a provision of the Constitution of said State, as provided in section 7, subsection (b) of this Act, subject to amendment or repeal only with the consent of the United States, and in no other manner... that any amendment to increase the benefits to lessees of Hawaiian home lands may be made in the constitution, or in the manner required for State legislation, but the qualifications of lessees shall not be changed except with the consent of the United States; ....
 
 
 35
 Pub.L. No. 86-3, § 4 (emphasis added). Article XII of the Hawaiian Constitution cannot be declared unconstitutional without holding this provision of the Admissions Act unconstitutional. Section 4 of the Admissions Act, federal legislation that Barrett fails to challenge, expressly reserves to the United States that no changes in the qualifications of the lessees may be made without its consent.
 
 
 36
 Barrett likely knew at the commencement of the litigation that the participation of the United States was required. We question whether he could in good faith file a claim seeking to invalidate Article XII and the HHCA, acknowledging in his complaint the State adopted the HHCA "pursuant to an agreement with, or requirement of, the United States" and yet feign ignorance of the United States' reservation within the Admissions Act. In Rice v. Cayetano, which Barrett cites extensively in his complaint, the Supreme Court describes at length Congress' concern with the welfare of native Hawaiians and the history of the HHCA and the Admissions Act. 528 U.S. at 507-11, 120 S.Ct. 1044.
 
 
 37
 Even if Barrett was not aware of the details of the Admissions Act at the commencement of the litigation, he received notice before the district court ruled on summary judgment. Defendants-intervenors-appellees `Ilio'ulaokalani Coalition, Inc., et al., raised the Admissions Act reservation in their answer, and again in their motion for summary judgment. The district court noted, despite the notice, that Barrett consistently maintained that he was not challenging the constitutionality of any federal law. It seems more likely Barrett strategically sought to avoid the inclusion of the United States throughout the litigation, and that he only sought to involve the United States after ending up on the wrong side of a summary judgment order.
 
 
 38
 Barrett lacks standing to challenge the native Hawaiian eligibility requirement for Hawaiian Homestead leases because his injury is not redressable. Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130. His injury, the inability to compete for Hawaiian homestead leases on an equal footing with native Hawaiians, requires a change in the qualification of the lease program. The native Hawaiian classification is both a state and a federal requirement. Consequently, any change in the qualification requires the participation of the State of Hawaii and the United States. Barrett's claim is not redressable because he failed to include the United States as a party to the action despite notice that its participation would be necessary.
 
 
 39
 Finally, counsel for Barrett raised for the first time during oral argument that the contention that the Hawaiian Admissions Act is obsolete and irrelevant because Congress has not re-authorized the legislation. We need not consider this argument. This court reviews only those issues argued specifically and distinctly in a party's brief. Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir.1994).
 
 
 40
 C. Motion for Reconsideration of the Homestead Lease Claims
 
 
 41
 Barrett moved pursuant to Federal Rule of Civil Procedure 59(e) for reconsideration of the dismissal of his homestead lease claim. He raised two new arguments. First, the district court was required to notify the United States because the constitutionality of an Act of Congress was drawn into question pursuant to 28 U.S.C. § 2403(a). Second, the district court was required to join the United States pursuant to Federal Rule of Civil Procedure 19(a). The district court denied Barrett's motion for reconsideration because he failed to advance these arguments in a timely manner.
 
 
 42
 While Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed.2000). Indeed, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Kona, 229 F.3d at 890 (citations omitted). A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. Id.
 
 
 43
 Barrett could reasonably have raised a § 2403 notification or Rule 19 joinder argument prior to the entry of the summary judgment. Furthermore, no new evidence has been introduced, and no intervening change in the law has occurred to warrant granting the motion for reconsideration.
 
 
 44
 Barrett neither established standing nor called into question the constitutionality of any Act of Congress. The purpose of § 2403(a), ensuring that courts not rule on the constitutionality of an Act of Congress without first receiving input from the United States, would not be implicated where a court dismissed an action for lack of plaintiff's own Article III standing. The party invoking federal jurisdiction, not the district court, bears the burden of establishing Article III standing. Lujan, 504 U.S. at 561, 112 S.Ct. 2130. While the United States always maintains a right to intervene pursuant to § 2403(a), this interest dissolves if the action itself is dismissed due to a plaintiff's lack of standing.
 
 
 45
 This rationale applies equally to Barrett's Rule 19(a) joinder argument. Rule 19 protects the interests of absent parties. 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1602, 22 (West 2001). If an action is no longer pendent due to plaintiff's deficient standing, the absent party's interest is not at stake.
 
 
 46
 Barrett invokes § 2403(a) and Rule 19(a) to remedy his own legal and strategic shortcomings of standing. His claim, on its own, presented without the United States as a party and never challenging the constitutionality of the Admissions Act renders his claim not redressable.
 
 
 47
 We affirm the district court's holding that Barrett failed to demonstrate an injury in fact from the OHA loan program. We also affirm the district court's holding that Barrett's claim challenging the HHC homestead lease program is not redressable because he failed to join the United States or challenge the Admissions Act. The motion for reconsideration was properly denied.
 
 V. CARROLL'S CLAIMS
 
 48
 Carroll claims the district court erred in finding that he failed to demonstrate an injury in fact. Carroll offers three alleged injuries in fact. First, Carroll contends injury by the Article XII and chapter 10 provisions personally subjecting him to racial classification.
 
 
 49
 Second, he argues injury from the OHA allocation of grants and benefits which, in his words, provide "greater sovereignty within the State of Hawaii's system of government" to native Hawaiians and Hawaiians than to State residents of other races. Carroll objects to the OHA's stated mission of providing for the "physical, sociological, psychological, and economic needs" of Hawaiians and native Hawaiians. Hawaii Rev. Stat. § 10-6(a)(1)(B). He cites the absence of any state agency charged with improving the condition of Caucasians.
 
 
 50
 Third, Carroll also argues that his injury is analogous to "representational harm" discussed in the context of racially gerrymandered voting districts. We address each argument in turn.
 
 A. Racial Classification
 
 51
 No party contests the fact that Article XII and chapter 10 define native Hawaiians and Hawaiians, and authorize benefits to members of these groups. Carroll maintains that in the absence of these discriminatory provisions, he would stand on "equal footing" with all Hawaiians, and that the State would promote the general welfare of all residents equally.
 
 
 52
 The district court properly rejected Carroll's broad claim of injury. Even if a government actor discriminates on the basis of race, only those personally denied equal treatment have standing to seek relief. Allen, 468 U.S. at 755, 104 S.Ct. 3315. The basis upon which Carroll relies to justify standing is simply the existence of a racial classification, not being denied equal treatment.
 
 
 53
 Being subjected to a racial classification differs materially from having personally been denied equal treatment, such as in education and contracting affirmative action programs. Carroll does not cite, and we do not find, any authority supporting the proposition that racial classification alone amounts to a showing of individualized harm. While racial classification is subject to strict scrutiny, Gratz, ___ U.S. at ___, 123 S.Ct. at 2427; Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 224, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), a plaintiff, to challenge such classification, must establish standing through showing a particularized denial of equal treatment. Allen, 468 U.S. at 755, 104 S.Ct. 3315; see also Adarand, 515 U.S. at 224, 115 S.Ct. 2097 ("any person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny") (emphasis added). Moreover, the Supreme Court has never held that race-conscious decision-making is impermissible in all circumstances. Shaw v. Reno, 509 U.S. 630, 642, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). Race consciousness does not inevitably lead to impermissible racial discrimination. Id. at 646, 113 S.Ct. 2816.
 
 
 54
 The Supreme Court's recent treatment of Adarand Constructors, Inc. v. Slater, 228 F.3d 1147 (10th Cir.2000), cert. dismissed, 534 U.S. 103, 122 S.Ct. 511, 151 L.Ed.2d 489 (2001), is useful for demonstrating the principles of standing in an equal protection context. In Adarand, plaintiff challenged the use of a race-conscious presumption in the Subcontracting Compensation Clause to the Department of Transportation's Disadvantage Business Enterprise Program procurement of federal highway funds. 228 F.3d at 1160. The Tenth Circuit concluded that Adarand had standing to challenge only those programs for which he competed, and lacked standing to challenge the program generally. Id. The Supreme Court dismissed certiorari as improvidently granted, recognizing that the petition for certiorari nowhere disputed the Tenth Circuit's ruling that petitioner lacked standing to challenge the broader program. Adarand, 534 U.S. at 107-08, 122 S.Ct. 511.
 
 
 55
 The Supreme Court's dismissal of its grant of certiorari demonstrates the importance of finding injury through the denial of equal treatment. Here, the existence of the classification alone is not sufficient to recognize standing. Carroll presents only a generalized grievance.
 
 B. Allocation of Benefits by Race
 
 56
 Carroll additionally alleges injury from the OHA's allocation of benefits to native Hawaiians and Hawaiians. This injury, unlike the classification objection discussed above, would suffice if Carroll could demonstrate a particularized injury. Standing doctrine "requires us to ask ... `Was this person hurt by the claimed wrongs?'" Snake River Farmers' Ass'n v. Dep't of Labor, 9 F.3d 792, 798 (9th Cir.1993).
 
 
 57
 In Carroll's deposition, he acknowledged that he has never identified any particular OHA program that he would like to participate in, and that he has never applied for any OHA program. Instead, Carroll offers only the general assertion that OHA discriminates against him on the basis of race through the operation of the OHA program.
 
 
 58
 Carroll does not provide any evidence of an injury from the OHA programs other than the classification itself. He offers no evidence that he is "able and ready" to compete for, or receive, an OHA benefit. Northeastern Florida, 508 U.S. at 666, 113 S.Ct. 2297; see also Monterey Mechanical Co. v. Wilson, 125 F.3d 702, 707 (9th Cir.1997) (finding injury in fact from plaintiff being forced to compete on an unequal basis for government construction contracts because of a racial preference). He has not even identified a program that he would be interested in receiving. See Wooden v. Board of Regents of Univ. Sys. of Georgia, 247 F.3d 1262, 1284-85 (11th Cir.2001) (student challenging race-based admissions policy lacked standing where there was no evidence that he actually intended to reapply for admission).
 
 
 59
 Carroll only claims the government is not acting in accordance with the United States Constitution. This kind of claim has been rejected as an appropriate basis for standing by the Supreme Court in Allen v. Wright. In Allen, plaintiffs challenged the Internal Revenue Service for its failure to deny tax-exempt status to racially discriminatory private schools. 468 U.S. at 739, 104 S.Ct. 3315. The plaintiffs contended their children were less likely to receive a desegregated education due to the government's failure to comport with the tax code. Id. at 746, 104 S.Ct. 3315. The Court held that the parties lacked standing to challenge the IRS, stating the "asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." Id. at 754, 104 S.Ct. 3315; see also Whitmore v. Arkansas, 495 U.S. 149, 160, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); Valley Forge, 454 U.S. at 482-83, 102 S.Ct. 752 ("This Court repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." (internal quotation marks and citation omitted)).
 
 
 60
 We conclude that Carroll lacks standing because he fails to show an injury from the allocation of benefits to native Hawaiians and Hawaiians. He presents only a generalized grievance, requesting the State to comply with his interpretation of the United States Constitution.
 
 C. Representational Harm
 
 61
 Carroll analogizes the harm suffered by him to "representational harm" in the context of racially-gerrymandered voting districts. Carroll relies upon Shaw and Hays, where legislation that classified and separated voting districts by race was enough to confer standing on those within the district "gerry-mandered" by race. Shaw, 509 U.S. at 647, 113 S.Ct. 2816. The Supreme Court has stated that "[v]oters in such districts may suffer the special representational harms racial classifications can cause in the voting context." Hays, 515 U.S. at 744, 115 S.Ct. 2431 (emphasis added). In this case, there has been no gerrymandering and Carroll makes no claim based on voting practices.
 
 
 62
 Carroll is attempting to bootstrap a Shaw claim into a general objection against OHA's programs. He objects not to the organization of the voting district, nor any manner in which the election is arranged. Instead, he contends that he will suffer representational harm because a trustee, for whom he is eligible to vote, may not adequately represent his interests due to the racial purposes of the program. This is not a voting rights case, and the unique justification for recognizing representational harm in the voting context does not apply in this case.
 
 D. Causation and Redressability
 
 63
 Because Carroll did not suffer an injury in fact, we do not need to address causation and redressability. Lujan, 504 U.S. at 561, 112 S.Ct. 2130.
 
 
 64
 We affirm the district court's determination that Carroll lacks standing to challenge the OHA business loan program. He did not suffer an injury in fact. Classification alone does not cause injury to Carroll, and he cannot show an injury from the allocation of benefits to native Hawaiians and Hawaiians. Carroll does not show why representational harm should apply in this benefits context.
 
 VI. CONCLUSION
 
 65
 Both Barrett and Carroll lack standing to bring their claims and the judgment of the district court in each case is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 "Native Hawaiians" are those who are descendants of the races inhabiting the Hawaiian Islands prior to 1778 with at least 50% Hawaiian blood quantum. Haw.Rev.Stat. § 10-2
 
 
 [2]
 "Hawaiians" are those who are descendants of the races inhabiting the Hawaiian Islands prior to 1778 without reference to blood quantum. Haw.Rev.Stat. § 10-2. This broader class includes the narrower "native Hawaiian."Rice, 528 U.S. at 499, 120 S.Ct. 1044.
 
 
 [3]
 Barrett additionally challenged Article XII's native Hawaiian gathering rights in his complaint but does not appeal this issue before this court
 
 
 [4]
 Barrett's disability does not factor into our standing analysis