**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

EARLINE COLE, as an individual and as personal representative of the Estate of Steven Bearcrane; et al.,

Plaintiffs-Appellants,

v.

MATTHEW ORAVEC, in his individual capacity; et al.,

Defendants-Appellees.

No.    14-35664

D.C. No. 1:09-cv-00021-SEH

MEMORANDUM*

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted February 8, 2017
Seattle, Washington

Before:  FISHER, PAEZ, and CALLAHAN, Circuit Judges.

Steven Bearcrane, a member of the Crow Nation, was shot and killed on the

Crow Indian Reservation by a non-Native American.  The FBI investigated his

death and classified it as a non-crime.  The decedent's family members—Earlene

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Cole, Cleteus Cole, and Precious Bearcrane (collectively, the "Bearcrane Family Members")—filed suit against the FBI Salt Lake City Field Office[1] (the "FBI") and FBI Agent Oravec ("Oravec") (collectively, "Defendants") for violations of their equal protection, substantive due process, and treaty rights. The Bearcrane Family Members asserted claims in their individual and representative capacities, as well as on behalf of third parties. They appeal only the dismissal of claims brought in their individual capacities. We review the dismissal de novo. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016).

1. The district court dismissed the Bearcrane Family Members' individual capacity claims for lack of standing. The Bearcrane Family Members argue that they have standing to assert equal protection claims in their individual capacities because they suffered disparate treatment as a result of Defendants' bias against Native Americans. The Bearcrane Family Members alleged that Defendants' conduct has caused them to suffer several distinct injuries. They claim that they receive fewer and less-adequate law enforcement services and are therefore less secure than other citizens, which has severely impacted them, both

---

[1] In their Opening Brief, the Bearcrane Family Members note that the Billings, Montana FBI Office may be the proper defendant, as opposed to the FBI Salt Lake City Field Office. On remand, they may raise this issue with the district court, if necessary.

2

emotionally and economically. They also claim that, as a result of their bias against Native Americans, Defendants erected a barrier to their ability to access statutory schemes that confer benefits on victims of crime. Indeed, the Bearcrane Family Members alleged that Defendants were motivated by impermissible bias when they classified Steven Bearcrane's death as a non-crime, which foreclosed any potential victims' benefits, and when Oravec interfered with the usual procedure that governs the manner in which crime victims may obtain benefits. The Bearcrane Family Members seek declaratory and injunctive relief against the FBI, and declaratory relief, damages, attorney's fees, and interest against Oravec.

2.      We conclude that the Bearcrane Family Members' alleged denial of benefits under the crime victims' rights statutes, resulting from Defendants' alleged bias against Native Americans, confers standing for them to assert equal protection claims in their individual capacities. With respect to this particular theory, the Bearcrane Family Members have sufficiently alleged an injury in fact, a causal connection, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Ne. Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge

3

the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing."); *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1085 (9th Cir. 2012) ("[W]hen the government imposes a discriminatory barrier making it more difficult for members of a group to obtain a benefit . . . , the injury of unequal opportunity to compete confers standing.").[2] But the Bearcrane Family Members' other alleged injuries-in-fact do not confer standing to proceed with their equal protection claims, as these injuries are merely "generalized grievances." *See Lance v. Coffman*, 549 U.S. 437, 439–42 (2007).

3.      None of the Bearcrane Family Members' theories of standing supports their substantive due process or treaty-based claims, *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (holding that "a plaintiff must demonstrate standing for each claim he seeks to press"), as those claims do not relate to the discriminatory barrier allegedly created by Defendants. Rather, those claims concern *different* injuries, including stigmatization and the denial of basic safety. Such injuries are indirect, non-particularized, and non-concrete. *See Spokeo, Inc.*

---

[2] Although the dissent distinguishes *Barnes-Wallace* on the basis that it involved "a policy or program that expressly preferred one group over another," Dissent at 4, the government did not establish the policy at issue in *Barnes-Wallace*. To the contrary, the government entered into a lease with the Boy Scouts, and the Boy Scouts had exclusionary policies regarding membership. *See* 704 F.3d at 1072–74. The court nonetheless entertained the potential application of standing on the basis of a discriminatory barrier. *See id.* at 1085–86.

*v. Robins*, 136 S. Ct. 1540, 1548 (2016); *Heckler v. Mathews*, 465 U.S. 728, 740 n.9 (1984). The Bearcrane Family Members therefore do not have standing to assert substantive due process and treaty-based claims in their individual capacities, and those claims were properly dismissed on that basis.[3]

4. Having found the Bearcrane Family Members have standing to bring an equal protection claim in their individual capacities, we must decide whether the Bearcrane Family Members plausibly alleged an equal protection claim against the FBI under Federal Rule of Civil Procedure 12(b)(6).[4] To state an equal protection claim, the Bearcrane Family Members must have plausibly alleged that "actions of the defendants had a discriminatory impact, and that defendants acted with an intent or purpose to discriminate based upon plaintiffs' membership in a protected class." *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011) (quoting *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009)). "Where, as here, the challenged governmental policy is 'facially neutral,' proof of disproportionate impact on an identifiable group, such

---

[3] The district court also correctly concluded that even if the Bearcrane Family Members had standing, they failed to allege plausible substantive due process and treaty-based claims.

[4] The Bearcrane Family Members do not challenge the district court's finding that they did not plausibly allege an equal protection claim, brought in their individual capacities, against Oravec in his official capacity.

as evidence of 'gross statistical disparities,' can satisfy the intent requirement where it tends to show that some invidious or discriminatory purpose underlies the policy." *The Comm. Concerning Cmty. Improvement*, 583 F.3d at 703. Because this case comes to us on a motion to dismiss, we assume the truth of the Bearcrane Family Members' factual allegations and determine only "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

5. Here, the Bearcrane Family Members, who are Native American, have alleged stark statistics regarding the high rate of crime committed against Native Americans, as compared to rates of crime committed against non-Native Americans. They have alleged that the FBI is responsible for the proliferation of crime against Native Americans because it has abdicated its responsibility to investigate crimes involving Native American victims. The Bearcrane Family Members point to the FBI's allegedly inadequate investigations into the deaths of Steven Bearcrane and Robert Springfield, both of whom were Native American, including the FBI's destruction of evidence in the course of the Steven Bearcrane investigation. They further alleged that the Billings, Montana FBI Office, which is overseen by the FBI Salt Lake City Field Office, routinely closes cases involving Native American victims without investigating or prosecuting those who committed such crimes. *See Elliot-Park v. Manglona*, 592 F.3d 1003, 1007 (9th

6

Cir. 2010) ("If police refuse to investigate or arrest people who commit crimes against a particular ethnic group, it's safe to assume that crimes against that group will rise."). They also alleged that Oravec, as an agent of the FBI, intentionally interfered with their access to benefits under victims' rights statutes, and made disparaging remarks regarding Native Americans. In addition, Oravec's supervisor allegedly ratified his conduct because that supervisor was informed of Oravec's "egregious mishandling of Mr. Bearcrane's case," yet refused to remedy the situation. Taken together, these allegations sufficiently raise an inference of disparate treatment as a result of the FBI's alleged discriminatory intent. *See The Comm. Concerning Cmty. Improvement*, 583 F.3d at 705.

6. Oravec argues that he is entitled to qualified immunity, but he relies on grounds that were either not raised in the district court, or not addressed by the district court. We therefore remand this issue to the district court so that it may decide the issue in the first instance.

7. The Bearcrane Family Members' motions for judicial notice of a state document (Dkt. Nos. 32, 33) are DENIED, and Defendants' motion to strike (Dkt. No. 36) is therefore DENIED as moot. The Bearcrane Family Members' unopposed motion to withdraw their motion for judicial notice of a *Brown v. Board*

7

*of Education* filing (Dkt. No. 41) is GRANTED, and their motion for judicial notice of that document (Dkt. No. 34) is thus DENIED as moot.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

The parties shall bear their own costs on appeal.

*Cole v. Oravec*, No. 14-35664

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the panel majority's finding that the Bearcrane Family Members lack standing to bring substantive due process and treaty-based claims in their individual capacities. However, based on the allegations contained in their complaint, I would hold that the Bearcrane Family Members lack standing to assert equal protection claims in their individual capacities. Accordingly, I would affirm the district court's decision dismissing the claims brought by the Bearcrane Family Members in their individual capacities for lack of standing, and therefore respectfully dissent. Moreover, I would affirm the district court's finding that the Bearcrane Family Members failed to plausibly allege an equal protection claim in their individual capacities against the FBI.

The Bearcrane Family Members assert that they have standing to bring equal protection claims in their individual capacities based on two alleged injuries. First, they contend that Defendants' failure to investigate Steven Bearcrane's death denied them access to crime victims' assistance programs. If the death is not classified as a "crime," the Bearcrane Family Members are ineligible to receive benefits under various crime victims' rights statutes. Second, they argue that Defendants' failure to provide adequate law enforcement services to Native Americans, including them, has denied them the same "basic safety" enjoyed by

1

non-Native Americans.  Based on these alleged injuries, the Bearcrane Family Members brought claims in their individual capacities against the FBI, Agent Weyand in his official capacity and his individual capacity, and Agent Oravec in his individual capacity.  The majority finds the first injury sufficient to confer standing.  Mem Dispo at 2–3.  I am not insensitive to the Bearcrane Family Members' loss, but they do not have standing to bring an equal protection claim arising from their denial of access to possible statutory benefits.

In finding that the Bearcrane Family Members have standing to assert an equal protection claim based on the denial of benefits under the victims' rights statutes, the majority relies on *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993). *See* Mem Dispo at 3.  But that case recognized that the injury in fact "in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of [a] barrier . . . ."  508 U.S. at 666.  In *City of Jacksonville*, the "barrier" at issue was a government program which awarded a certain percentage of contracts to minority-owned businesses.  *Id.* at 658.  In finding that the plaintiffs had standing to challenge this "barrier," *City of Jacksonville* looked to several other cases that found standing based on the inability to be considered for a government benefit.  In *Turner v. Fouche*, 396 U.S. 346 (1970), the "barrier" was a "Georgia law limiting school board membership to property owners . . . ."  508

2

U.S. at 664. In *Clements v. Fashing*, 457 U.S. 957 (1982), the "barrier" was a "provision of the Texas Constitution, which require[d] the immediate resignation of some (but not all) state officeholders upon their announcement of a candidacy for another officer." 508 U.S. at 664. And in *Regents of the University of California v. Bakke*, 438 U.S. 265 (1978), the "barrier" was "a medical school's admissions program, which reserved 16 of the 100 places in the entering class for minority applicants . . . ." 508 U.S. at 665. We have applied the *City of Jacksonville* standing analysis "[w]hen a plaintiff brings an equal protection challenge to a *race-conscious program* and seeks forward-looking relief . . . ." *Carroll v. Nakatani*, 342 F.3d 934, 941 (9th Cir. 2003). In such cases, "the injury is not the inability to obtain the benefit, but the inability to compete on an equal footing." *Id.* (citing *City of Jacksonville*, 508 U.S. at 666; *Texas v. Lesage,* 528 U.S. 18, 21 (1999)).

In *Barnes-Wallace v. City of San Diego*, 530 F.3d 776 (9th Cir. 2008), we applied this standing analysis to assess whether plaintiffs—an agnostic couple and a lesbian couple—had standing to challenge the validity of a government contract with a corporation chartered by the Boy Scouts, a group whose policies expressly excluded lesbians and agnostics. *Id.* at 780, 787. Based on their objections to the Boy Scouts' stated policies, the plaintiffs would not use the facilities leased and operated by the corporation. *Id.* at 780–81, 784. The court found that the plaintiffs

3

did not have standing based on the "policy of granting preferential access to the Boy Scouts" to use facilities leased from the City of San Diego because the plaintiffs had no plans to apply for access to those facilities. *Id.* at 787; *see also Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1085 (9th Cir. 2012).

These cases do not support the Bearcrane Family Members' standing to bring equal protection claims in their individual capacities. In each, the "discriminatory barrier" at issue was a policy or program that expressly preferred one group over another. The government action at issue here, however, is not part of such a program or policy. Instead, the alleged "discriminatory barrier" results from the FBI administering its cases in a manner which allegedly deprived the Bearcrane Family Members of the ability to apply for benefits of certain victims' rights statutes. Whatever claims the Bearcrane Family Members might have, if any, are not the result of any "discriminatory barrier" of the sort giving rise to an equal protection claim. Holding otherwise jams a square peg into a round hole, and distorts this Circuit's standing jurisprudence.

Moreover, the claims brought by the Bearcrane Family Members in their individual capacities do not otherwise satisfy the requirements of our Article III standing analysis. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Bearcrane Family Members' alleged injury is the curtailment of the opportunity to seek benefits under the victims' rights statutes as the result of the

4

FBI's administration of its cases. This alleged injury is neither "concrete and particularized," nor is it "likely to be redressed by a favorable decision of this court." *Id.* Indeed, even if it were ultimately determined that Defendants interfered with the Bearcrane Family Members' ability to seek benefits under these statutes in violation of their equal protection rights under the Fifth Amendment, such a decision would not give them the benefits of these statutes, or even the opportunity to seek such benefits, because the court could not direct Defendants to classify Steven Bearcrane's death as a crime.

Nor is there a sufficient "causal connection between the injury and the conduct complained of," such that the Bearcrane Family Members' alleged injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 560–61 (internal alterations and quotations omitted). To the contrary, even if the FBI had investigated Steven Bearcrane's death in a manner his family found non-objectionable, his death might still be classified as a non-crime and the Bearcrane Family Members would still be denied access to the victims' rights statutes. Thus, the requisite causal connection is lacking here.

Finally, even if I were to agree with the majority that the Bearcrane Family Members had standing to assert an equal protection claim in their individual capacities against the FBI, I would nonetheless find that they did not successfully

state a claim upon which relief could be granted, and would affirm the district court's dismissal under Rule 12(b)(6). To state such a claim against the FBI, the Bearcrane Family Members must allege facts demonstrating that the FBI's actions "had a discriminatory impact, and that [the FBI] acted with an intent or purpose to discriminate based upon [the Bearcrane Family Members'] membership in a protected class." *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009). Where a "challenged governmental policy is 'facially neutral,' proof of disproportionate impact on an identifiable group, such as evidence of 'gross statistical disparities,' can satisfy the intent requirement *where it tends to show that some invidious or discriminatory purpose underlies the policy*." *Id.* (emphasis added). But "official action will not be held unconstitutional solely because it results in a racially disproportionate impact. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977) (internal quotation omitted).

Here, none of the Bearcrane Family Members' non-conclusory factual allegations show a pattern and practice of racial discrimination by the FBI, or show that the FBI acted with an intent or purpose to discriminate against them because they are Native Americans. Likewise, the statistics presented, while perhaps demonstrating gross statistical disparities, do not tend to show that the FBI

6

*intentionally or purposefully* discriminated against the Bearcrane Family Members based on their membership in a protected class in administering its cases, or that these statistics *result from* the FBI's conduct at all.

I would thus affirm the district court's dismissal of the Bearcrane Family Members' equal protection claim for lack of standing, and for failure to state a claim upon which relief can be granted.