**PLANS, INC., Plaintiff–Appellant,**

v.

**SACRAMENTO CITY UNIFIED SCHOOL DISTRICT; Twin Ridges Elementary School District, Defendants–Appellees.**

No. 01–16437.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2002.

Filed Feb. 10, 2003.

Scott M. Kendall, Elk Grove, CA, for the appellant.

Christian M. Keiner and Michelle L. Cannon, Girard & Vinson, Sacramento, CA, for the appellees.

Before D.W. NELSON, BEEZER and WARDLAW, Circuit Judges.

## OPINION

WARDLAW, Circuit Judge.

The People for Legal and Non Sectarian Schools ("PLANS") sued the Sacramento City and Twin Ridges Elementary school districts for sponsoring and supporting Waldorf schools with public funds. PLANS appeals the district court's judgment and order denying it taxpayer standing. Because PLANS does not challenge a specific program or activity, but rather the Waldorf school curriculum as a whole, and because the schools are supported by a measurable amount of public funds, we find that PLANS enjoys taxpayer standing to proceed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I. Background

PLANS is a non-profit California corporation whose members include taxpayers residing in both the Sacramento City Unified School District ("SCUSD") and the Twin Ridges Elementary School District ("TRESD"). One of PLANS's objectives is to educate the public about the nature of the education provided by Waldorf schools.

Austrian-born Rudolf Steiner developed the Waldorf system of education in 1919 when he founded a school in Germany for the children of the Waldorf–Astoria cigarette factory workers. Waldorf education involves alternative teaching methods, including the incorporation of the arts into all subjects, three- to four-week block subject lessons, and integration of various subjects, such as storytelling, reading myths and legends, learning handcrafts, cooking, gardening, painting, music, and movement. Before founding the Waldorf method of education, Steiner formulated a "spiritual science" known as "Anthroposophy." PLANS alleges, and for purposes of these proceedings, the school districts concede, that Anthroposophy is a religion, inseparable from Waldorf education.

In 1993, as part of its voluntary desegregation plan, SCUSD proposed that several of its schools become magnet schools, each with a specialty focus. One of the district's schools, the Oak Ridge School, chose the Waldorf method as its magnet focus. The SCUSD school board approved Oak Ridge's magnet focus in April 1995. Oak Ridge began operating as a Waldorf-methods magnet school soon afterwards. Before the 1997–98 school year, Oak Ridge changed locations and was renamed the John Morse Waldorf Methods Magnet School. During the 1997–98 school year, John Morse received public funding, including magnet funds in the amount of $188,580.

The teachers at John Morse receive training from Rudolf Steiner College, a teachers' college specializing in Waldorf educational methods. The parties dispute whether the teacher training program excludes all topics of a spiritual, religious, or Anthroposophical nature.

Meanwhile, TRESD agreed in 1994 to sponsor a Waldorf charter school. The Twin Ridges Alternative Charter School opened in September 1994, and became the Yuba River Charter School the following year. As a charter school, Yuba River is largely publicly funded. The parties dispute whether Anthroposophy is part of the Yuba River curriculum.

In February 1998, PLANS filed a complaint against the school districts for declaratory and injunctive relief. PLANS alleges that the school districts' sponsorship and operation of Waldorf schools constitutes an establishment of religion in violation of the First and Fourteenth Amendments of the United States Constitution, as well as Articles XVI, § 5 and IX, § 8 of the California Constitution. In response to PLANS's complaint, the school districts moved for summary judgment or summary adjudication, contending that PLANS lacks taxpayer standing to bring this suit.

Initially, the district court denied the school districts' motion, reasoning that PLANS challenged the schools' curricula as a comprehensive unit, not merely an isolated activity for which a separate public expenditure could be identified. It also held that PLANS had raised a genuine issue of material fact as to the role of Anthroposophy in Waldorf education. The school districts sought permission to file an interlocutory appeal on the question of taxpayer standing, which we denied. *PLANS, Inc. v. Sacramento City Unified Sch. Dist.*, No. 00–80002 (9th Cir. Apr. 27, 2002) (unpublished order denying petition for permission to appeal).

As trial on the matter approached, however, the school districts filed a notice of new authority, asserting that the Second Circuit's decision denying taxpayer standing in *Altman v. Bedford Central School District*, 245 F.3d 49 (2d Cir.2001), supported a similar judgment in this case. As a result, the district court ordered PLANS to provide a further offer of proof as to the "expenditure of public monies for the activities that are objected to in this complaint." PLANS submitted further briefing, reiterating its objection to the entirety of the Waldorf schools and their funding by the public school districts.

The district court found PLANS's offer of proof insufficient, because the only expenditure identified with particularity as directly attributable to the Waldorf method was not shown to increase SCUSD's teacher training costs by any amount, and thus PLANS had failed to show that adoption of the Waldorf method added any sum at all to ordinary operations costs. It held that in the absence of such a showing, PLANS lacked taxpayer standing to sustain this suit.

## II. Discussion

PLANS's standing depends upon whether its claim of public funding of Waldorf education is a "good-faith pocketbook" challenge. *Doremus v. Bd. of Educ.*, 342 U.S. 429, 434–35, 72 S.Ct. 394, 96 L.Ed. 475 (1952). A good-faith pocketbook challenge identifies a measurable sum of public funds being used to further a challenged activity. Here, where PLANS objected to the entire Waldorf curriculum of the two schools in question and identified public funds used for those schools, we conclude that it raises a good-faith pocketbook challenge.

■ We review de novo a district court's grant of summary judgment. *Cole v. Oroville Union High Sch. Dist.,* 228 F.3d 1092, 1097 (9th Cir.2000). "Viewing the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences in its favor, we must determine 'whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact.'" *Id.* (quoting *Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc)). We also review issues of standing de novo. *Id.* at 1097–98; *see also Bruce v. United States,* 759 F.2d 755, 758 (9th Cir.1985) (reviewing taxpayer standing).

■ Standing derives from the Article III requirement that federal courts hear only live cases and controversies. *Cole,* 228 F.3d at 1098 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). "One of [the] landmarks, setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III—'serv[ing] to identify those disputes which are appropriately resolved through the judicial process'—is the doctrine of standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (alteration in original) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). Because PLANS has members residing in both of the school districts at issue, seeks to protect interests germane to its organizational purpose, and asserts claims for relief that do not demand the participation of its individual members, PLANS appropriately asserts organizational standing. *See Cent. Delta Water Agency v. United States,* 306 F.3d 938, 951 (9th Cir.2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The issue disputed here is whether those PLANS members upon which the organization's standing is based have taxpayer standing, thus creating standing for the organization itself. "'[T]axpayer standing,' by its nature, requires an injury resulting from a government's expenditure of tax revenues." *Doe v. Madison Sch. Dist. No. 321,* 177 F.3d 789, 793 (9th Cir.1999) (en banc).

The district court, relying upon *Altman* for its application of the good-faith pocketbook requirement, held that PLANS's members, and thus the organization itself, lacked taxpayer standing because PLANS was unable to identify a measurable amount of public monies being used to further particular challenged activities. Its reliance upon *Altman* is misplaced, however, because whereas the plaintiffs in *Altman* challenged specific programs and activities within state-run public schools, PLANS objects to the comprehensive curricula of the Waldorf schools as permeated by a particular religion, Anthroposophy.

In *Altman,* the plaintiffs challenged a fourth-grade class's reading of the Hindu story of Ganesha, an art class's construction of worry dolls, one school's Earth Day festivities, a teacher's use of a "Listening to Nature" tape in classroom instruction, and several other isolated school programs or activities. 245 F.3d at 57–63. In other words, the taxpayers challenged not the operation of the schools themselves, but the spiritual nature of certain programs within the schools' curricula. The schools themselves were public schools whose curriculum was state-regulated. The Second Circuit reviewed the plaintiffs' challenges to each activity and analyzed as to each whether a measurable amount of public funding had been dedicated to that activity: "[W]hat was required for the establishment of taxpayer standing to complain of[these] activities ... was a showing of a

measurable appropriation or loss of revenue attributable to the challenged activities at those schools." *Id.* at 74. The court rejected taxpayer standing as a basis for each of the specific challenges. *Id.*

PLANS does not limit its objection to specific programs or activities within the Waldorf educational day. Rather, it alleges that the entire Waldorf approach is inherently religious, and that in using public funds to support it, the school districts are impermissibly establishing religious schools. These allegations, along with PLANS's identification of public funds used for the operation of the Waldorf schools, are sufficient to support taxpayer standing. This case is no different from a situation in which a school district uses public monies to fund the operation of a parochial school, *e.g.*, setting up a magnet or charter Catholic school, where there would be no question as to taxpayer standing to challenge such funding.

The school districts cite several cases in which courts have denied taxpayer standing due to plaintiffs' failures to meet the good-faith pocketbook requirement. In *Doremus,* for example, the Supreme Court held that plaintiffs challenging a policy of reading the Old Testament at the beginning of each school day could not assert taxpayer standing because "[t]here [was] no allegation that this activity [was] supported by any separate tax or paid for from any particular appropriation or that it add[ed] any sum whatever to the cost of conducting the school." 342 U.S. at 433, 72 S.Ct. 394. In *Doe,* where parents and students challenged a school district policy permitting selected students to give religious speeches or prayers during graduation ceremonies, we reasoned that "Doe identifie[d] no tax dollars that defendants spent solely on the graduation prayer," and that the funds used for renting a hall, printing graduation programs, buying de-

corations, and hiring security guards would have also been used in a graduation without prayer and thus could not support taxpayer standing. 177 F.3d at 794. Finally, we noted in *Cole* that, if asserted, taxpayer standing would fail in a suit to allow students to give religious speeches or invocations at graduation: "[T]heir claims of taxpayer standing would fail because the appellants have not identified tax dollars spent solely on the valedictory speech or the invocation or on the District's decision to refuse to allow sectarian speech at its graduation ceremonies." 228 F.3d at 1100 n. 5.

Once again, however, these cases are distinguishable from PLANS's challenge, because, as in *Altman,* they involve challenges to specific public school programs or activities. Here, PLANS does not challenge a specific policy on prayer or isolated activities occurring in the Waldorf schools. As with a traditionally religious or sectarian school, PLANS suggests that it is impossible to separate the religious and non-religious aspects of the Waldorf schools. Rather, according to the organization's allegations, the spiritual philosophy or "religion" Anthroposophy permeates the entire Waldorf school curriculum.

### III. Conclusion

Because PLANS challenges the Waldorf school curriculum as a whole, and because it has shown that a measurable amount of public funds support the Waldorf schools, PLANS has taxpayer standing to pursue this suit.

**REVERSED and REMANDED.**