Earl F. ARAKAKI, et al., Plaintiffs,

v.

Linda LINGLE in her official capacity as Governor of the State of Hawaii, et al., Defendants.

Civil No. 02–00139 SOM/KSC.

United States District Court, D. Hawai'i.

Nov. 21, 2003.

H. William Burgess, Honolulu, HI, for Plaintiffs.

Mark J. Bennett, Attorney General, Honolulu, HI, for Linda Lingle, State Officials, Hawaiian Homes Commissioners.

Steven Miskinis, U.S. Attorney's Office, Honolulu, HI, for United States of America.

Sherry P. Broder, Honolulu, HI, for Trustees of the Office of Hawaiian Affairs.

Robert G. Klein, McCorriston Miller Mukai MacKinnon, Honolulu, HI, for Defendant–Intervenor SCHHA.

ORDER DENYING PLAINTIFFS' MO-
TION FOR RECONSIDERATION
OF STANDING ORDERS; ORDER
DENYING PLAINTIFFS' RULE
54(b) REQUEST; ORDER GRANT-
ING DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CLAIM
REGARDING THE HAWAIIAN
HOME LANDS LEASE PROGRAM;
ORDER DENYING REMAINDER
OF DEFENDANTS' MOTIONS;
ORDER DENYING THE UNITED
STATES' MOTION TO STRIKE;
ORDER TO SHOW CAUSE WHY
THE CLAIMS OF SANDRA BUR-
GESS, DONNA SCAFF, AND EVE-
LYN ARAKAKI SHOULD NOT BE
DISMISSED

MOLLWAY, District Judge.

## I. INTRODUCTION.

The court's earlier rulings have left Plaintiffs with two claims based only on Plaintiffs' status as state taxpayers. One claim seeks to enjoin the State of Hawaii from appropriating state tax revenue for the Hawaiian Home Lands lease program administered by the Department of Hawaiian Homelands ("DHHL"), which is headed by an executive board known as the Hawaiian Homes Commission (comprised of Defendants Micah Kane, Wonda Mae Agpalsa, Henry Cho, Thomas P. Contrades, Quentin Kawananakoa, Herring K Kalua, Milton Pa, and John A.H. Tomoso) (collectively "HHC"). Plaintiffs' other claim seeks to enjoin the state from appropriating state tax revenue for programs administered by the Office of Hawaiian Affairs and its trustees, Defendants Haunani Apoliona, Rowena Akana; Donald B. Cataluna; Linda Dela Cruz; Dante Carpenter; Colette Y.P. Machado; Boyd P. Mossman; Oswald Stender; and John D. Waiheʻe, IV (collectively "OHA").[1]

The court was scheduled to hear a first round of summary judgment motions concerning these two claims on September 8, 2003.[2] However, after the Ninth Circuit

---

1. No Defendant has previously disputed that the State of Hawaii appropriates tax revenue for programs administered by DHHL/HHC and OHA. Nor have Plaintiffs established an actual link between state tax appropriations and any of those programs.

2. The September 8, 2003, hearing date was itself a continuation of an earlier hearing date

issued its decision in *Carroll v. Nakatani,* 342 F.3d 934 (9th Cir.2003), on September 2, 2003, the court vacated its earlier order dismissing the United States so that the impact, if any, of *Carroll* on claims against the United States could be discussed. The court then conducted a status conference on September 8, 2003, instead of a hearing on summary judgment motions.

At the status conference on September 8, 2003, the court scheduled a hearing on motions that the parties were invited to file based on *Carroll:*

> We're going to have a hearing on November 17th. Any party may bring a motion that is confined to the impact, if any, of the Carroll decision on this case. So to the extent any party thinks that I should dismiss it or put something back in to the case that was dismissed, you have to bring a motion to that effect.

Transcript of Proceedings (Sept. 8, 2003) at 42. Five motions claiming to be based on *Carroll* were filed on October 14, 2003, 80 Fed.Appx. 552. In a sixth motion, the United States seeks to strike portions of Plaintiffs' reply in support of Plaintiffs' motion.

In the first motion, Plaintiffs ask this court to vacate the restrictions placed on Plaintiffs' standing in the court's earlier orders. Plaintiffs' motion is not one made necessary or appropriate by *Carroll.* The court deems Plaintiffs' motion to be one for reconsideration and denies the motion because it does not satisfy any condition for reconsideration. The court also denies Plaintiffs' alternative request for Rule 54(b) certification of the court's earlier decision limiting claims to those based on state taxpayer standing.

The second through fifth motions raise issues related to each other. In the second motion, the United States moves for dismissal, asserting that Plaintiffs lack standing to sue the United States. The United States argues that *Carroll* does nothing to affect the correctness of the court's earlier dismissal.

In the third motion, DHHL/HHC argues that, because Plaintiffs lack standing to pursue claims against the United States, Plaintiffs' claims challenging the Hawaiian Home Lands lease program created by the Hawaiian Homes Commission Act ("HHCA") must be dismissed. Under *Carroll,* the United States is a necessary party to such a challenge, but, the motion argues, Plaintiffs' state taxpayer standing does not give Plaintiffs standing to challenge the federal law that is a necessary part of any challenge to the Hawaiian Home Lands lease program.

In the fourth motion, OHA similarly argues that, under *Carroll,* the United States is an indispensable party to any challenge to the Hawaiian Home Lands lease program. OHA argues that, because Plaintiffs lack standing to bring suit against the United States, Plaintiffs' Hawaiian Home Lands lease program claims must be dismissed. OHA also argues that Plaintiffs lack standing to pursue their claims against OHA because those claims involve an analysis of the public land trust created by the Admission Act.

In the fifth motion, Defendants–Intervenors State Council of Hawaiian Homestead Association and Anthony Sang, Sr. (collectively "SCHHA"), argue that Plaintiffs' challenge to the Hawaiian Home Lands lease program is a nonjusticiable political question. SCHHA also contends that, un-

---

that was postponed when one of Plaintiffs' attorneys unexpectedly became ill and then passed away.

der *Carroll*, Plaintiffs lack standing to pursue that claim.

The sixth motion, a motion to strike filed by the United States on November 7, 2003, argues that Plaintiffs' reply in support of Plaintiffs' motion raises issues in an untimely manner.

In this order, the court reiterates that state taxpayer standing only allows a plaintiff to challenge the state law underlying the expenditure of state taxes. The court has already ruled that state taxpayer status does not provide standing to challenge state statutes to the extent they do not involve state tax revenue. Thus, Plaintiffs' state taxpayer status does not allow Plaintiffs to challenge spending by DHHL/HHC and/or OHA that involves rental income or other money not derived from state tax revenue. Any success Plaintiffs may have in this lawsuit, therefore, will fall short of closing down entirely either DHHL/HHC or OHA, as neither relies entirely on state tax revenue.

*Carroll* teaches that any challenge to the lessee requirements of the Hawaiian Home Lands lease program necessarily involves a challenge to the Admission Act, which is a federal law. The court therefore grants Motions 2 through 5 in part, dismissing Plaintiffs' claim challenging the Hawaiian Home Lands lease program based on lack of standing. State taxpayer standing is too limited to permit a challenge to a federal law and therefore does not allow Plaintiffs to challenge the Hawaiian Home Lands lease program, which is mandated by both state and federal law. *See W. Mining Council v. Watt,* 643 F.2d 618, 631–32 (9th Cir.1981). This means that the United States, DHHL/HHC, SCHHA, and Defendant–Intervenors Hui Kako'o 'Aina Ho'opulapula, Blossom Feiteira, and Dutchy Saffery (collectively "Hui Defendants") are dismissed from this case.

By this order, the court is not ruling that the Admission Act can never be challenged. The court can certainly envision claimants with standing to challenge the Admission Act, but any such claimant must have more than state taxpayer status. Such a claimant could possibly include, for example, someone who applied for a Hawaiian Home Lands lease and was turned down solely because he or she was not native Hawaiian. No Plaintiff in this case has shown any such standing.

The court denies the other portions of Motions 2 through 5. That is, the court rejects as moot OHA's argument that the United States is a necessary party to Plaintiffs' challenge to the use by OHA of ceded land revenue. Because state taxpayer standing does not extend to any challenge to use of revenue that is not tax revenue, the issue of who is a necessary party to any such challenge need not be addressed. The court has already ruled that Plaintiffs may not proceed on the basis that they are the beneficiaries of a public land trust. On this record, the court does not find persuasive OHA's contention that appropriations of state tax revenues for OHA are somehow required by the Admission Act. To the extent SCHHA argues that Plaintiffs' claims raise a political question, the court concludes that this argument does not arise as a result of the *Carroll* decision and is therefore beyond the scope of the current motions. Although the political question argument may possibly be raised by some party in another round of motions, presumably in a form different from the form already rejected by this court in an earlier order, that argument is premature given the schedule of motions instituted by this court.

Finally, because the claim against the United States has been dismissed, the court denies the United States' motion to strike (filed November 7, 2003) as moot.

## II. *STANDARD OF REVIEW.*

The standard of review for motions to dismiss has been set forth in this court's previous orders. That standard is incorporated herein by reference.

## III. *HISTORICAL BACKGROUND.*

The background of this case has been set forth in this court's previous orders. It is restated herein only to provide context to the present motions.

### A. *DHHL/HHC's Hawaiian Home Lands Lease Program.*

In 1921, Congress enacted the HHCA, 42 Stat. 108, setting aside about 200,000 acres of land ceded to the United States by the Republic of Hawaii and creating a program of loans and long-term leases for the benefit of "native Hawaiians."[3] *Rice v. Cayetano,* 528 U.S. 495, 507, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000).

In the Admission Act, Congress imposed certain requirements on Hawaii as conditions of statehood. *See* P.L. 86–3, § 4 (March 18, 1959), *reprinted in* 73 Stat. 4, 5 ("Admission Act"). Pursuant to the Admission Act, Hawaii agreed in 1959 to adopt the HHCA as part of its constitution. Haw. Const. art. XII, §§ 2–3. Except for property kept by the United States, the Admission Act granted Hawaii title to all the public lands and property within the boundaries of the State of Hawaii that were previously held by the United States, including the land subject to the HHCA. Admission Act, § 5(b); *Rice,* 528

U.S. at 507, 120 S.Ct. 1044. As required by the Admission Act, these public lands, as well as the proceeds and income therefrom, are now held by Hawaii "as a public trust."[4] Admission Act, § 5(f); Haw. Const. art. XII, § 4; *Rice,* 528 U.S. at 507–08, 120 S.Ct. 1044. The Admission Act requires this "public trust" to be used for one or more of the following purposes:

[1] for the support of the public schools and other public educational institutions, [2] for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended, [3] for the development of farm and home ownership on as widespread a basis as possible[,][4] for the making of public improvements, and [5] for the provision of lands for public use.

73 Stat. at 6; *see also Price v. Akaka,* 3 F.3d 1220, 1222 (9th Cir.1993), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994). As state taxpayers, Plaintiffs allege that, pursuant to the HHCA, DHHL/HHC runs a Hawaiian Home Lands lease program for the benefit of native Hawaiians and that this lease program violates their rights under the Equal Protection Clause. *See* Complaint (March 4, 2002) ¶ 2.

In section 4 of the Admission Act, the United States reserved to itself the right to consent to any changes in "the qualifications of lessees" under the Hawaiian Home Lands lease program. Pub.L. 86–3, § 4.

### B. *OHA.*

In 1978, OHA was established by a state constitutional amendment. *See* Haw.

---

**3.** As used in the HHCA and this order, "native Hawaiians" means "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778." 42 Stat. 108; *Rice,* 528 U.S. at 507, 120 S.Ct. 1044. The Hawaii Legislature has since provided that successors to the original native Hawaiian lessees under the HHCA

only need to be at least one-quarter Hawaiian. *See* Hawaii Homes Commission Act § 209 (Michie 2003).

**4.** DHHL/HHC manages the 200,000 or so acres set aside for the benefit of native Hawaiians under the HHCA. *See* Haw.Rev.Stat. §§ 10–3(3), 26–17.

Const. art. XII, §§ 5–6. The purposes of OHA include 1) bettering the condition of Hawaiians[5] and native Hawaiians, 2) serving as the principal state agency responsible for the performance, development, and coordination of programs and activities relating to Hawaiians and native Hawaiians; 3) assessing the policies and practices of other agencies affecting Hawaiians and native Hawaiians; 4) applying for, receiving, and disbursing grants and donations from all sources for Hawaiian and native Hawaiian programs and services; and 5) serving as a receptacle for reparations. Haw.Rev. Stat. § 10–3. It is undisputed that OHA runs a variety of programs for the benefit of Hawaiians and native Hawaiians. As state taxpayers, Plaintiffs allege that the provision of benefits by OHA to only Hawaiians and native Hawaiians violates Plaintiffs' rights under the Equal Protection Clause.

## IV. *ANALYSIS.*

### A. *The Carroll Decision.*

On September 2, 2003, the Ninth Circuit issued its decision in *Carroll.* *Carroll* involved consolidated challenges under the Equal Protection Clause to OHA and the Hawaiian Home Lands lease program administered by DHHL/HHC. The motions filed on October 14, 2003, were required to be limited to a discussion of whether *Carroll* affects this case. The court therefore begins with an examination of *Carroll.*

In *Carroll,* the Ninth Circuit held that Patrick Barrett lacked standing to claim that OHA's business loan program was racially discriminatory. The Ninth Circuit concluded that Barrett lacked an injury sufficient to give him such standing, as Barrett failed to demonstrate that he was ready and able to compete for an OHA loan. Barrett had submitted to OHA only a symbolic, incomplete loan application, which was returned to him with a note requesting that it be completed and resubmitted to OHA. Barrett had not formulated a business plan or even researched necessary business expenses, making him unable to compete for OHA's business loans. *Carroll,* 342 F.3d at 941–42. The Ninth Circuit concluded that Barrett presented only generalized grievances against OHA that he lacked standing to bring. *Id.* at 943; *see also United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (the "rule against generalized grievances applies with as much force in the equal protection context as in any other"); *Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (the Supreme Court "has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court").

With respect to Barrett's challenge to the Hawaiian Home Lands lease program, the Ninth Circuit held that Barrett satisfied the injury-in-fact prong of the standing analysis because he had applied for a Hawaiian Home Lands lease.[6] *Id.* The Ninth Circuit concluded, however, that Barrett's challenge to the Hawaiian Home Lands lease program was not redressable. *Carroll,* 342 F.3d at 944. The Ninth Circuit reasoned that the Hawaiian Home

---

**5.** As used in the chapter governing OHA and in this order, "Hawaiian" does not refer to a person of any particular blood quantum and instead means "any descendent of the aboriginal peoples inhabiting the Hawaiian Islands which exercised sovereignty and subsisted in the Hawaiian Islands in 1778, and which

peoples thereafter have continued to reside in Hawaii." Haw.Rev.Stat. § 10–2.

**6.** The district court had also determined that, in challenging the Hawaiian Home Lands lease program, Barrett had an injury-in-fact for standing purposes. The district court found this injury-in-fact even though Barrett had filed his Hawaiian Home Lands lease

Lands lease program could not be challenged without changing the requirements for lessees of that program, as the native Hawaiian classification is both a state and a federal eligibility requirement. Because the United States reserved to itself the right to consent to any change in "the qualifications of lessees" under the program, and because Barrett had not named the United States as a defendant in his action, the Ninth Circuit concluded that Barrett could not seek relief regarding the Hawaiian Home Lands lease program. *Id.*

After concluding that Barrett lacked standing to pursue his claims, the Ninth Circuit examined John Carroll's standing to pursue his claims, concluding that he too lacked standing. *Id.* at 946. Carroll had asserted an injury-in-fact based on the mere existence of the alleged racial classifications of Hawaiians and native Hawaiians. *Id.* Carroll acknowledged that he "never identified any particular OHA program that he would like to participate in, and that he … never applied for any OHA program." *Id.* at 947. The Ninth Circuit concluded that Carroll's claims were of the kind that have been "rejected as an appropriate basis for standing." *Id.* Carroll's claims were merely improper generalized grievances that requested that Hawaii comply with the United States Constitution. *Id.; see also Hays,* 515 U.S. at 743, 115 S.Ct. 2431; *Allen,* 468 U.S. at 754, 104 S.Ct. 3315.

B. *Plaintiffs' Motion for Reconsideration of the Court's Earlier Limitation on Their Standing is Denied.*

1. *Plaintiffs Do Not Satisfy the Requirements to Obtain Reconsideration.*

■ Calling their motion a request that the court vacate restrictions on their

program application late, holding that Barrett's injury was his inability to compete on an equal footing with native Hawaiians. *See*

standing, Plaintiffs ask this court to reconsider the earlier orders on standing. There are three grounds justifying reconsideration of an order: (i) an intervening change in controlling law, (ii) the availability of new evidence, and (iii) the need to correct clear error or prevent manifest injustice. *All Hawaii Tours v. Polynesian Cultural Ctr.,* 116 F.R.D. 645, 649 (D.Haw. 1987), *rev'd in part on other grounds,* 855 F.2d 860, 1988 WL 86203 (9th Cir.1988); *see also* Local Rule 60.1 (allowing reconsideration based on: (a) the discovery of new material facts not previously available; (b) an intervening change in the law; or (c) a manifest error of law or fact). None of these grounds justifies reconsideration of this court's earlier standing orders.

Plaintiffs do not argue that new evidence has been discovered. To the extent Plaintiffs ask this court to reconsider its earlier orders as being based on manifest errors of law or fact, that request is untimely. Under Local Rule 60.1, reconsideration motions based on claims of manifest errors of law or fact "must be filed not more than ten (10) business days after the court's written order is filed." Moreover, Plaintiffs have already filed an unsuccessful motion for reconsideration of the standing order. At best, Plaintiffs argue that there has been an intervening change in the law that expands Plaintiffs' state taxpayer standing. Plaintiffs' motion essentially presents argument about the proper scope of state taxpayer standing. This order supplements and clarifies the scope of state taxpayer standing as set forth in the court's previous orders. Plaintiffs' request for reconsideration of those orders based on intervening changes in the law is

*Carroll v. Nakatani,* 188 F.Supp.2d 1219, 1229 and 1230 n. 16 (D.Haw.2001).

denied. No such intervening change has occurred.

In their Complaint, Plaintiffs allege that state taxes are being appropriated for DHHL/HHC, and that tax revenue is being spent by DHHL/HHC on the Hawaiian Home Lands lease program. Plaintiffs allege that the "HHCA laws require [DHHL/HHC] to work solely for the benefit of the racial class of native Hawaiians and to promote the interests of people in that class." Complaint (March 4, 2002), ¶ 58(d) at 25.

This court has ruled that Plaintiffs have state taxpayer standing to assert their claims under the Equal Protection Clause. *See* Order Granting in Part and Denying in Part Motions to Dismiss on Standing Grounds (May 8, 2002) at 1098–99, 2002 WL 32346742 at *4 ("Plaintiffs have standing to seek to restrain the State's expenditures of tax revenues on HHC, DHHL, and/or OHA."). The court further held that "Plaintiffs only have taxpayer standing to challenge direct expenditures of tax money by the legislature." *Id.* at 1100, 2002 WL 32346742, at *6. This court did not find that Plaintiffs may seek invalidation of DHHL/HHC and OHA *in toto,* as it appears that both DHHL/HHC and OHA receive money from sources other than state taxes. Instead, the court ruled that Plaintiffs have standing to challenge only the expenditure of state tax money. The scope of Plaintiffs' state taxpayer standing has not been changed by *Carroll* or any other intervening decision on state taxpayer standing. However, as discussed later in this order, in light of *Carroll,* Plaintiffs' challenge to the Hawaiian Home Lands lease program must be dismissed.

■ This court has recognized that, in the Ninth Circuit, "a state taxpayer has standing to challenge a state statute" when that taxpayer is able to show that he or she " 'has sustained or is immediately in danger of sustaining some *direct injury* as the result of [the challenged statute's] enforcement.'" *Cammack v. Waihee,* 932 F.2d 765, 769 (9th Cir.1991) (emphasis added) (quoting *Doremus v. Board of Educ.,* 342 U.S. 429, 434, 72 S.Ct. 394, 96 L.Ed. 475 (1952)). A taxpayer who brings a "good-faith pocket book action" and demonstrates that the challenged statute involves the expenditure of state tax revenues has such a "direct injury." *See Cammack,* 932 F.2d at 769. To have state taxpayer standing, the state taxpayer must allege that the "direct injury" is caused by the expenditure of state tax dollars "and there must be a substantial likelihood that the relief requested will redress the injury." *Bell v. City of Kellogg,* 922 F.2d 1418, 1423 (9th Cir.1991) (stating that the causation and redressability prongs of the standing analysis apply to state taxpayer standing cases); *accord Van Dyke v. Regents of Univ. of Cal.,* 815 F.Supp. 1341, 1343 (C.D.Cal.1993) ("Taxpayers have frequently been held to possess standing to challenge state expenditures that purportedly violate the Establishment Clause. . . . Nevertheless, such plaintiffs must, like all others, demonstrate that they fulfill each of the constitutional and prudential requirements of the standing doctrine.").

The Ninth Circuit has examined the scope of state taxpayer standing in several cases. It allowed a challenge to Hawaii's Good Friday holiday for state government employees, finding a direct injury because the statute granting the Good Friday holiday was entirely intertwined with the expenditure of taxes, which paid state government employees' salaries during the holiday. *Cammack,* 932 F.2d at 771–72. The plaintiffs had state taxpayer standing "to challenge the expenditure of tax revenues on paid leave days for the Good Friday holiday." *Id.* at 772.

In *PLANS, Inc. v. Sacramento City Unified Sch. Dist.*, 319 F.3d 504 (9th Cir. 2003), a very recent decision, the Ninth Circuit held that the plaintiff had state taxpayer standing. In *PLANS*, the plaintiff objected to the funding of a Waldorf school with state taxes. The Ninth Circuit focused on the inherently religious nature of the schools's entire curriculum, which was supported by state taxes. *Id.* at 507–08. The Ninth Circuit did not discuss the remedies available to the plaintiff if it succeeded in its suit.

Notwithstanding Plaintiffs' argument to the contrary, *PLANS* did not hold that the plaintiff in that case could have the Waldorf school itself declared unconstitutional. Nothing in *PLANS* indicates that, if successful, the plaintiff in that case would have been entitled to anything more than an order enjoining the expenditure of state taxes on the Waldorf school. Such a limitation would be consistent with the requirement articulated by the Ninth Circuit in *Bell v. City of Kellogg* that the injury—the expenditure of state taxes—be redressable by the relief requested. *See Bell*, 922 F.2d at 1423. Although declaring the Waldorf school itself unconstitutional could redress the plaintiff's injury by preventing further state taxes from being spent on the school, that relief would go far beyond redressing the plaintiff's alleged injury. Under *Cammack*, the plaintiff in *PLANS* had standing to challenge the statute appropriating the state tax revenue to the Waldorf School, but not the existence of the school itself, as the plaintiff's alleged injury was the expenditure of the tax revenue, not the existence of the school. *See Cammack*, 932 F.2d at 769.

In a case with facts closer to the present case, the Ninth Circuit found that plaintiffs who challenge the appropriation, transfer, and spending of tax revenue from the General Fund of Hawaii's treasury for the benefit of "Hawaiians" under programs run by OHA had state taxpayer standing. *See Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1180–81 (9th Cir.1984). On remand in *Hoohuli*, the district court noted that it was not being asked to pass on the constitutionality of the OHA programs. *Hoohuli v. Ariyoshi*, 631 F.Supp. 1153, 1159 (D.Haw.1986). The court was only asked to determine whether the Hawaii legislature was allowed to extend benefits to both Hawaiians and native Hawaiians. *Id.* The plaintiffs' challenge in *Hoohuli* was therefore limited to the statute that caused the tax expenditure giving rise to the plaintiffs' taxpayer standing.

By contrast, in *Doe v. Madison School District No. 321*, 177 F.3d 789, 794 (9th Cir.1999), the Ninth Circuit found no state taxpayer standing for a challenge to expenditures of state tax revenue on a graduation prayer, as the plaintiff was unable to demonstrate that the prayer actually required state tax dollars to be spent. Instead, there was no direct injury that would be redressed if the expenditure of state tax revenue were enjoined; the plaintiff acknowledged that graduation expenses would be incurred regardless of whether there was or was not a graduation prayer. *See id.*

■ *Bell, Cammack, PLANS, Hoohuli*, and *Madison* teach that, with state taxpayer standing, Plaintiffs may challenge programs run by DHHL/HHC and/or OHA, but only to the extent Plaintiffs can establish a "direct injury" caused by the expenditure of state tax revenue as a result of a state law. In addition, those cases instruct that Plaintiffs' claims must be redressable by an injunction prohibiting the expenditure of state tax revenue.

■ Accordingly, as the court ruled earlier, to the extent DHHL/HHC and OHA programs rely on funds other than tax money, Plaintiffs do not have state taxpay-

er standing to challenge those programs. For example, to the extent OHA receives rents from ceded lands and uses that money to fund programs for the benefit of Hawaiians and native Hawaiians, Plaintiffs do not have state taxpayer standing to challenge those programs. When rental income pays for a program, Plaintiffs cannot assert the requisite threatened or sustained direct pocketbook injury based on the expenditure of state tax money. *See Cammack,* 932 F.2d at 769–70. Moreover, with respect to rents, an injunction against the expenditure of state taxes would not redress Plaintiffs' claims.[7] However, to the extent the State of Hawaii appropriates state tax revenue for programs, including, if applicable, the ceded land program administered by OHA, Plaintiffs do have state taxpayer standing to challenge those expenditures of state tax revenue, provided Plaintiffs also satisfy the causation, redressability, and prudential requirements for such standing.

Plaintiffs cite no persuasive authority indicating that state taxpayer standing may be extended to allow challenges to expenditures of any and all "public funds," including challenges to state money derived from sources other than state taxes. Plaintiffs also cite no authority indicating that, merely because a state legislature appropriates some measurable amount of tax revenue to a program, a state taxpayer can challenge the very existence of that program when the program can exist without the state's appropriation of tax revenue to it. Such a challenge would certainly present an impermissible generalized grievance.

In the present case, Plaintiffs allege that the state appropriates state tax revenue for the Hawaiian Home Lands lease program run by DHHL/HHC. Plaintiffs further allege that the state appropriates state tax revenue for various programs run by OHA. Accordingly, Plaintiffs allege "direct injuries" based on the state's expenditure of their state tax money, and the court must examine whether those injuries were caused by a state law and whether they can be redressed by an injunction prohibiting the expenditure of state tax revenue.

### 2. *Plaintiffs' Rule 54(b) Request is Denied.*

Under certain circumstances, a court may enter final judgment on a claim before final judgment is entered on all claims. Rule 54(b) of the Federal Rules of Civil Procedure states:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Accordingly, for Rule 54(b) to apply, there must be more than one claim and at least one claim must be fully resolved. *See Ariz. State Carpenters Pension Trust Fund v. Miller,* 938 F.2d 1038, 1039 (9th Cir.1991); *see also Curtiss–Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). The court's

---

**7.** For example, if the State of Hawaii imposed a property tax to create a disaster relief fund, a citizen who paid income tax, but who did not own property and did not pay the property tax, would have no injury as a result of the property tax. In other words, that citizen would not be able to establish a causal link between the tax paid and the alleged harm suffered. In the present case, such a link would be missing to the extent DHHL/HHC and OHA administer programs using their own funds.

previous orders limited Plaintiffs' claims to challenges to programs run by DHHL/HHC and OHA based on state taxpayer standing. The court ruled that Plaintiffs did not have standing to challenge those programs more broadly.

Even assuming that the court's earlier rulings could be said to be final resolutions because they ended the litigation of certain claims and left nothing for the court to do but execute judgment on those terminated claims, *see Miller*, 938 F.2d at 1039, the court must, in considering Rule 54(b) certification, examine whether "there is no just reason to delay the appeal." *See Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. 1460. "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id.*

 In deciding whether there is no just reason to delay an appeal, the court examines whether the claims are separable from the others remaining and whether the nature of the claims already determined is such that appellate courts would not have to decide the same issues more than once. *Id.* The court determines that the claims dismissed when the court limited Plaintiffs' claims to those based on state taxpayer standing are related to Plaintiffs' remaining claims. All of Plaintiffs' claims challenge programs on the same basis. Moreover, at the time of the earlier orders, this court had not yet ruled on all of the potential jurisdictional bars to Plaintiffs' claims, which could be raised even after the present order. In light of the present order dismissing the Hawaiian Home Lands lease program claim, certification of the previous standing orders appears particularly inappropriate. A complete record (especially on jurisdictional issues) before any appeal is taken would reduce the likelihood of piecemeal litigation and multiple appeals.

Nor do equitable concerns justify Rule 54(b) certification of the court's previous standing orders. Plaintiffs merely argue that they are getting older and that they have limited financial resources. These arguments, by themselves, do not support Rule 54(b) certification, as the arguments are shared by nearly every litigant in every case. Nor does Plaintiffs' claim of delay support such certification. Contrary to Plaintiffs' assertion that this court has placed this case "on the back burner," *see* Plaintiffs' Motion at 25, this court has attempted to set forth an orderly schedule for deciding the very important and complicated issues raised by Plaintiffs. The delays in this case over the last few months have resulted from the death of one of Plaintiffs' lead attorneys and an intervening Ninth Circuit decision. These were extraordinary events that this court could not control and that are unlikely to be repeated before this case is completed in this court. Accordingly, the court finds that Plaintiffs' appeal to the equities does not overcome the policy against piecemeal appeals. *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797–98 (9th Cir.1991) ("Rule 54(b) certification is scrutinized to 'prevent piecemeal appeals in cases which should be reviewed only as single units.'") (quoting *Curtiss–Wright*, 446 U.S. at 10, 100 S.Ct. 1460).

C. *Defendants' Motions to Dismiss The Claim Challenging the Hawaiian Home Lands Lease Program Are Granted.*

1. *Any Challenge to the Hawaiian Home Lands Lease Program Necessarily Includes a Challenge to the Admission Act, Which Plaintiffs Lack Standing to Attack.*

Defendants argue that Plaintiffs' state taxpayer standing is too limited to permit Plaintiffs' challenge to the Hawaiian Home

Lands lease program. The court agrees and grants the motions to dismiss that challenge.

■ Any challenge to the use of state taxes for programs that allegedly violate the Equal Protection Clause requires this court to examine the laws underlying the expenditure of those taxes. Plaintiffs allege in their Complaint that their taxes are being appropriated for DHHL/HHC. They then allege that, because DHHL/HHC is required by "HHCA laws" to run the Hawaiian Home Lands lease program for the benefit of native Hawaiians, their taxes are being unconstitutionally spent for the benefit of a racial class. *See* Complaint ¶ 58(d).

■ Under *Carroll,* any challenge to the lessee requirements of the Hawaiian Home Lands lease program set up by the HHCA, a state law, necessarily involves a challenge to the Admission Act, a federal law, as "[t]he native Hawaiian [lessee] classification is both a state and a federal requirement." *Carroll,* 342 F.3d at 944. Although Plaintiffs' state taxpayer standing allows them to challenge the expenditure of state taxes under state law, state taxpayer standing does not, by itself, permit a challenge to a federal law. *See W. Mining Council v. Watt,* 643 F.2d 618, 631–32 (9th Cir.1981). The federal law in issue here, the Admission Act, does not itself appropriate or disburse any money, much less any state tax revenue. The most Plaintiffs can argue is that the Admission Act required Hawaii to adopt the HHCA, which, in turn, resulted in state tax expenditures for the Hawaiian Home Lands lease program.

In *Western Mining Council,* the Ninth Circuit was faced with a state taxpayer's challenge to a federal law. The plaintiffs, claiming federal and state taxpayer standing, sought to "enjoin the Secretary of the Interior from expending certain funds appropriated" pursuant to the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–1782. *Id.* at 622. As the plaintiffs did not establish the required nexus between the claim asserted and their status as federal taxpayers, the Ninth Circuit held that they did not have federal taxpayer standing. *Id.* at 631. The Ninth Circuit then went on to say that the plaintiffs' status as state taxpayers was insufficient to support a challenge to federal law that did not itself appropriate or disburse any money. *Id.* The Ninth Circuit explained that, "[i]n ... a state taxpayer challenge to federal statutes, the policies of the standing doctrine demand that plaintiffs allege some injury which is more definite and individual than the higher state taxes allegedly suffered here." [8] *Id.* at 632. The Ninth Circuit concluded that the plaintiffs' challenge to the federal law presented "at best a highly generalized injury." *Id.*

The federal law at issue in *Western Mining Council* was admittedly a policy statement. However, there is no authority indicating that, for standing purposes, a court should examine a plaintiff's standing differently depending on whether the plaintiff is challenging a substantive federal law or a federal statute articulating

---

**8.** Ninth Circuit precedent is clear on this point. Other circuits examining the analogous issue of whether municipal taxpayer standing allows a challenge to state law are split. In *Board of Education of the Mount Sinai Union Free School District v. New York State Teachers Retirement System,* 60 F.3d 106, 111 (2d Cir.1995), the Second Circuit analogously ruled that municipal taxpayer standing is insufficient to allow a plaintiff to challenge state mandated laws. However, the Sixth Circuit, in *Gwinn Area Community Schools v. Michigan,* 741 F.2d 840, 844 (6th Cir.1984), *abrogated on other grounds, Lapides v. Bd. of Regents of Univ. Sys. of Georgia,* 535 U.S. 613, 619, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), allowed municipal taxpayers to challenge a state law.

federal policy. At the hearing on these motions, this court repeatedly asked whether any authority held that the answer to the question "Does state taxpayer standing permit a challenge to federal law that does not itself impose or spend state tax dollars?" turned on the nature of the federal law. No party identified any such authority.

■ Relying on *Western Mining Council,* this court holds that a challenge to the Admission Act requires standing that Plaintiffs lack. Plaintiffs' injury is only the expenditure of state taxes on the Hawaiian Home Lands lease program. Nothing in the record indicates that the Admission Act itself requires any expenditure of state taxes.[9] A challenge to the lessee requirements under the Hawaiian Home Lands lease program is a challenge to both the HHCA, a state constitutional provision, and the Admissions Act, a federal law that mandates the lessee requirements. State taxpayer standing is insufficient to sustain such a challenge. *See W. Mining Council,* 643 F.2d at 631–32. Plaintiffs' challenge to the federal law underlying the Hawaiian Home Lands lease program presents the court with only a generalized grievance that Plaintiffs lack standing to bring. *Hays,* 515 U.S. at 743, 115 S.Ct. 2431; *Allen,* 468 U.S. at 754, 104 S.Ct. 3315.

Because Plaintiffs' Hawaiian Home Lands lease program claim necessarily involves a challenge to the Admission Act, a challenge that cannot be brought by a party with only state taxpayer standing, the court dismisses the claim. The court cannot enjoin the expenditure of state tax-es on the Hawaiian Home Lands lease program without examining the constitutionality of the Admissions Act; no remedy can issue to Plaintiffs given their limited standing. Accordingly, the court dismisses all challenges to the Hawaiian Home Lands lease program. This means that DHHL/HHC, the United States, SCHHA, and the Hui Defendants are dismissed from this case, as those Defendants are only involved in Plaintiffs' challenge to the Hawaiian Home Lands lease program.

### 2. The Remaining Portions of Motions 2 Through 6 Are Denied.

Given the dismissal of Plaintiffs' challenge to the Hawaiian Home Lands lease program, most of the remainder of Motions 2 through 6 is moot. For example, the court need not address OHA's claim that the United States is a necessary party to any challenge to ceded land revenue, as Plaintiffs' claims are limited to challenging the expenditure of state taxes. Similarly, the court need not address OHA's argument concerning the public land trust, as the court has already ruled that Plaintiffs may not proceed as purported beneficiaries of that trust.

Nor is the court persuaded at this time by OHA's argument that the claim against OHA should be dismissed if the United States is dismissed. OHA argues that any challenge to OHA necessarily includes a challenge to the Admission Act in which the United States must participate. Nothing in the Admission Act requires the creation of OHA or governs OHA's actions. Indeed, OHA was not created until many years after Hawaii became a state, and

---

**9.** This case therefore differs from *Carroll* in that Barrett, one of the plaintiffs in *Carroll,* had claimed an actual injury for standing purposes in the form of an inability to compete for Hawaiian Home Lands leases on an equal footing with native Hawaiians. Barrett's injury arose because the United States, in the Admission Act, required Hawaii to adopt the HHCA and run the Hawaiian Home Lands lease program. Unlike Barrett, Plaintiffs did not apply for a Hawaiian Home Lands lease under the HHCA.

even then it took a state constitutional amendment to create OHA.

The court need not rule on the merits of the United States' motion to strike; the dismissal of the claims against the United States makes the motion to strike moot.

The remaining portions of Motions 2 through 5 present arguments properly brought in a round of summary judgment motions not limited to the effect of *Carroll* on this action.

## V. *CONCLUSION.*

Plaintiffs' motion to vacate restrictions on their standing, which the court views as a motion for reconsideration, is denied. Plaintiffs' request for Rule 54(b) certification of this court's earlier standing orders is also denied.

Because Plaintiffs' state taxpayer standing does not allow them to challenge the federal lessee requirements for the Hawaiian Home Lands lease program, and because, under *Carroll,* challenging federal law is a necessary element of challenging the corresponding state law, Plaintiffs lack standing to challenge that program. Accordingly, to the extent various Defendants seek dismissal of Plaintiffs' claim regarding the Hawaiian Home Lands lease program, those motions are granted. The United States, DHHL/HHC, SCHHA, and the Hui Defendants are dismissed from this case. The court denies other portions of Defendants' motions.

The United States' motion to strike is denied as moot.

This order leaves for further adjudication the Plaintiffs' challenge as state taxpayers to the expenditure of state tax revenue on various programs administered by OHA. That challenge, however, should possibly be limited to certain Plaintiffs. At the hearing, counsel for Plaintiffs admitted that, because of their Hawaiian ancestry, Plaintiffs Sandra Puanani Burgess, Donna Malia Scaff, and Evelyn C. Arakaki, who are Hawaiian and therefore eligible to participate in OHA programs, lacked standing to pursue claims against OHA. In a subsequent letter to this court dated November 19, 2003, Plaintiffs imply that OHA runs programs for which Burgess, Scaff, and Arakaki are not eligible because those programs are available only to native Hawaiians.[10] Plaintiffs are ordered to show cause why Sandra Puanani Burgess, Donna Malia Scaff, and Evelyn C. Arakaki should not be dismissed for lack of standing because of their eligibility for OHA programs. No later than December 3, 2003, Sandra Puanani Burgess, Donna Malia Scaff, and Evelyn C. Arakaki must identify the OHA programs for which they are not eligible. A hearing on this order to show cause will be held on January 12, 2004, at 9:00 am.

The court has scheduled the first round of summary judgment motions on this remaining claim for January 12, 2004, at 9:00 am. Those motions shall be filed and served no later than December 3, 2003. A party may, but need not, opt to file just an amended hearing notice that states that it incorporates a previously withdrawn motion, without the need to attach or refile that previously withdrawn motion. In the alternative, a party may file new papers. Parties may not simultaneously file new papers and file separate documents incorporating previously withdrawn papers, and

---

**10.** The court agrees with Plaintiffs that, contrary to a report by the media, Plaintiffs did not agree to dismissal of Burgess, Scaff, and Arakaki at the hearing on these motions. The court understood Plaintiffs to be saying at the hearing only that such dismissal would be warranted if the court dismissed the claim concerning the Hawaiian Home Lands lease program.

may not, if any new papers are filed, state that the new papers incorporate previous filings. Any opposition shall be filed and served no later than December 15, 2003. Any reply shall be filed and served no later than December 22, 2003. The parties shall follow all other local rules for this first round of summary judgment motions, which is limited to motions that do not turn on or relate to the level of scrutiny that applies to Plaintiffs' claim.

IT IS SO ORDERED.